779 F.2d 351
 6 Employee Benefits Ca 2765
 Loran W. ROBBINS, Marion M. Winstead, Harold J. Yates,
Robert J. Baker, Howard McDougall, Arthur H. Bunte, Earl
Jennings, and R.V. Pulliam, and present Trustees Central
States, Southeast and Southwest Areas Pension Fund,
Plaintiffs-Appellees,
v.
POCKET BEVERAGE COMPANY, INC., Defendant-Appellant.
 No. 84-1220.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 14, 1984.
Decided Nov. 21, 1985.*
 
 Thomas J. Angell, Central States Pension Fund, Chicago, Ill., for defendant-appellant.
 Robert H. Brown, Kahn, Dees, Donovan & Kahn, Evansville, Ind., for plaintiffs-appellees.
 Before BAUER and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.**
 COFFEY, Circuit Judge.
 
 
 1
 The defendant, Pocket Beverage Company, appeals an order of the district court granting the plaintiffs' motion for summary judgment and imposing liability under the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA") for employer pension contributions due the Central States, Southeast and Southwest Areas Pension Fund. We affirm.
 
 
 2
 * The plaintiffs, the present trustees for the Central States, Southeast and Southwest Areas Pension Fund,[1] filed this action on March 11, 1983, in the United States District Court for the Northern District of Illinois alleging that the defendant,[2] Pocket Beverage Company, was liable for contributions due the Fund. Pocket Beverage Company had been a party to a collective bargaining agreement that required the company to contribute to the Fund. In 1981, Pocket Beverage sold its assets and ceased its obligation to contribute to the Fund, thereby becoming statutorily liable for a lump sum payment due the Fund, as defined in Section 4203(a) of ERISA, 29 U.S.C. Secs. 1383(a), 1382 and 1381.[3] In February and April 1982, the Fund sent notices to Pocket Beverage demanding the payments owed under the withdrawal liability provisions of ERISA, 29 U.S.C. Sec. 1382(2), but Pocket Beverage refused to make such payments. As a result of this failure to satisfy the statutorily imposed payment obligation, the Fund and its trustees declared a statutory default in Pocket Beverage's payment of withdrawal liability, in accordance with 29 U.S.C. Sec. 1399(c)(5)(A). Such default authorized the immediate assessment of all withdrawal liability owing and due, from the due date of the first payment. The complaint also sought recovery of the principal and interest due on the withdrawal liability payments, attorney's fees, costs, and an additional amount equal to interest or liquidated damages.
 
 
 3
 The record reveals that on April 22, 1983, Pocket Beverage moved to dismiss for lack of jurisdiction or, alternatively, improper venue. To support this motion, Pocket Beverage contended that it had never conducted business in Illinois and that the poor health of its chief executive officer presented difficulties in defending the suit in the Northern District of Illinois. On July 12, 1983, the court denied the motion to dismiss for lack of jurisdiction but, construing the motion as a 28 U.S.C. Sec. 1404(a) motion for transfer to the United States District Court for the Southern District of Indiana, ordered a change of venue to the Southern District of Indiana. As of August 2, 1983, the files in the case had not been transferred to the federal court in Indiana. On August 2, 1983, plaintiffs moved for reconsideration of the transfer order, contending that the case was ripe for summary judgment as the defendant was liable, as a matter of law, to the Fund pursuant to the ERISA statute, and that Pocket Beverage's chief executive officer would not be required to travel to Illinois to defend the action.[4] The court granted plaintiffs' motion for reconsideration and vacated the transfer order it had entered July 12, 1983; thus the court continued to exercise jurisdiction over the case. The parties filed cross-motions for summary judgment. Subsequently, the court granted summary judgment for the trustees and against Pocket Beverage.
 
 
 4
 The only question raised on this appeal is whether the entry of an order by a federal district court, pursuant to 28 U.S.C. Sec. 1404(a), transferring a civil action to another federal district court instantly and irrevocably strips the transferring court of jurisdiction, including the right to reconsider and to vacate its own transfer order. Pocket Beverage had previously contended before the district court and in its brief to this court that the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") amending the ERISA statute to impose automatic liability for an employer's withdrawal from an ERISA governed pension plan violated the due process clause of the Fifth Amendment. Pocket Beverage at oral argument conceded that this issue is moot in light of the recent decision in Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), upholding the constitutionality of the MPPAA. Thus, as there is no merit to the defendant's argument, this court need not address this issue.
 
 II
 
 5
 The defendant primarily relies on Koehring v. Hyde Construction Co., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966) to support its argument that once the district court entered its change of venue order transferring the case to the Southern District of Indiana, the court was without the authority to reconsider its change of venue order and decide the issues presented in this case. In Koehring, the United States Court of Appeals for the Fifth Circuit entered an order on March 10, 1964, that "pending the entry of the order of transfer [of a certain civil action by the United States District Court for the Southern District of Mississippi to the United States District Court for the Northern District of Oklahoma] and the physical filing of the record in Oklahoma, this order shall constitute a transfer to enable the parties to present the matter to the District Court of Oklahoma." 362 U.S. at 364, 86 S.Ct. at 523-24. On March 11, 1964, five days before the papers in the civil action were transferred by the United States District Court for the Southern District of Mississippi to the United States District Court for the Northern District of Oklahoma, the Oklahoma court assumed jurisdiction and entered an order temporarily restraining the plaintiffs in the federal action from proceeding with the trial of a case they had commenced earlier in a state court in Mississippi.[5] Nevertheless, on March 11, 1964, the plaintiffs commenced the trial in the state court in Mississippi, and on March 14, 1964, the Oklahoma federal court found the plaintiffs in contempt of court for violating its restraining order. Despite this contempt finding, the plaintiffs continued to pursue their action in the Mississippi state court with the result that they obtained a judgment against the defendants on April 8, 1964. On September 1, 1964, the Oklahoma federal court enjoined the plaintiffs from seeking to enforce the Mississippi state court judgment, and ordered the subject matter of that Mississippi state court suit retried in the Oklahoma federal court.
 
 
 6
 On appeal from the September 1, 1964 contempt citation order, the United States Court of Appeals for the Tenth Circuit held that at the time the Oklahoma federal court issued its temporary restraining order staying the Mississippi trial, the Oklahoma federal court was without jurisdiction since it had not yet received the record from the Mississippi federal court. The Tenth Circuit also noted that the Fifth Circuit acted improperly in ordering the immediate or instanter transfer of the case as only the district court, pursuant to the express terms of 28 U.S.C. Sec. 1404, could lawfully order the transfer of the case directly to the Oklahoma district court. Hyde Construction Co. v. Koehring Co., 348 F.2d 643, 648-49 (10th Cir.1965).[6]
 
 
 7
 The Supreme Court of the United States reversed the judgment of the Tenth Circuit, and remanded to the Oklahoma federal court for further proceedings. The Supreme Court held that although the express terms in 28 U.S.C. Sec. 1404(a) provide that only a federal district court may transfer civil actions from one federal district court to another, federal courts of appeals are not precluded from effecting a transfer by direct order, where the circumstances require "extraordinary action." Koehring, 382 U.S. at 364, 86 S.Ct. at 523-24. The court decided that the circumstances justified extraordinary action since the Mississippi federal court had ignored the Fifth Circuit's earlier instructions to transfer the case to the Oklahoma federal court and because the duplicative action in the Mississippi state court was scheduled to commence (and did commence) on March 11, 1964, one day after the Fifth Circuit's instanter transfer order.
 
 
 8
 Pocket Beverage argues that the Koehring decision is authority for the proposition that jurisdiction vests in the transferee court instantly when an otherwise valid transfer order is entered, even though the court record may not reach the transferee court until some later time. Koehring, however, is distinguishable from this case and thus does not control our analysis of whether or not the entry of the transfer order by the Illinois federal district court instantly deprived that court of jurisdiction to reconsider its earlier transfer order. Initially, we note that the facts before us do not involve the entry of a transfer order by a federal appellate court, rather the transfer order in this case was entered by a federal district court. Thus, unlike the situation in Koehring, there has been no extraordinary intervention by an appellate court, with an explicit assertion that its transfer order is instanter. The Illinois federal district court also made no similar express assertion, as did the court in Koehring, that its transfer order was to be effective at the moment of entry of the order, and further there is no suggestion that any urgency existed here. For example, it does not appear that either the trustees or Pocket Beverage threatened to proceed in some manner in another forum, such as a state court. Finally, there is no showing that the transferee court, the Indiana federal court, proposed to exercise jurisdiction promptly for some special purposes. Thus, under the circumstances of this case we decline to expand and interpret the holding in Koehring as stripping the district court of its power to reconsider its earlier order transferring the case to the Indiana district court.
 
 
 9
 Pocket Beverage also argues that we are bound by the dicta of our decision in General Electric Co. v. Byrne, 611 F.2d 670, 673 (7th Cir.1979) where we stated in passing that, "the entry of the transfer order deprives the transferor court of jurisdiction until the case is returned to it, so that any action taken by the transferor court after transfer would be ineffective." In General Electric, which involved review by a judicial panel on multidistrict litigation pursuant to, 28 U.S.C. Sec. 1407 and not a change of venue motion made pursuant to 28 U.S.C. Sec. 1404(a), there was no motion before the court requesting that the transferor court reconsider its own transfer order. Thus, we distinguish the General Electric decision as the facts and issues in that case are not analogous to the facts and issues presented to court. To date, this circuit has not explicitly addressed the question of a district court's power to vacate its own transfer order.
 
 
 10
 Other courts facing this issue have concluded that a district court does enjoy such power, provided that the physical transfer of the record to the transferee forum has not yet occurred. See, e.g., Fisher v. United Airlines, Inc., 218 F.Supp. 223, 224 (S.D.N.Y.1963) (court had power to vacate, when only two days had elapsed after entry of transfer order and papers had not been transmitted to transferee court). The underlying rationale of these cases is that the actual transfer of the record, not just the entry of the order, deprives the transferor court of jurisdiction to review its decision. See, e.g., In Re Sosa, 712 F.2d 1479, 1480 (D.C.Cir.1983); In Re Nine Mile Limited, 673 F.2d 242, 243 (8th Cir.1982); Starnes v. McGuire, 512 F.2d 918, 924, 935 (D.C.Cir.1974) (en banc ); Littman v. Bache & Co., 246 F.2d 490, 492 (2d Cir.1957); cf. A.C. Nielsen Co. v. Hoffman, 270 F.2d 693, 695 (7th Cir.1959) (court of appeals enjoyed mandamus jurisdiction where there was no showing that files had reached transferee district court before petition for review as filed). Here, the district court neither transferred the record to the Indiana district court, nor did the court recite that its earlier order transferring the case was to take effect immediately. Thus, the facts of this case certainly fall within the parameters of the rule that district courts do not lose jurisdiction until the physical transfer of the record to the transferee court is completed.
 
 
 11
 This case does not compel us to decide whether the forwarding of the record should be the universally controlling fact; rather, we limit our holding to this case. Thus, we hold the Illinois federal district court had jurisdiction to reconsider its earlier motion to transfer their case to the Southern District of Indiana in light of the absence of: any indication in the transfer order that it was intended to be effective instantly; any attempt by the Indiana federal court to exercise jurisdiction during the interval; any attempt by either party to persuade the Indiana federal court to do so; a forwarding of the record in the case, and any other unusual circumstances.
 
 
 12
 Accordingly, since we hold in this fact situation that the district court had jurisdiction to revoke its earlier order transferring the case to the Indiana district court, and thus had the authority to consider the merits of this case, we affirm the district court's entry of summary judgment in favor of plaintiffs.
 
 
 
 *
 This appeal was originally decided by unreported order on November 21, 1985. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion
 
 
 **
 The Honorable James E. Doyle, Senior District Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 The Fund is a common law pension trust and employee benefit plan whose principal place of business is Chicago. The Fund is a multiemployer pension plan as defined in Section 3(37)(A) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1002(37)(A)
 
 
 [2]
 Pocket Beverage Company, an Indiana corporation, had been an employer and party in interest in an industry affecting commerce within the meaning of 29 U.S.C. Secs. 1002(5), (11), (12) and (14)
 
 
 [3]
 Section 1383(a) provides:
 "For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer--
 (1) permanently ceases to have an obligation to contribute under the plan, or
 (2) permanently ceases all covered operations under the plan."
 Section 1382 states:
 "When an employer withdraws from a multiemployer plan, the plan sponsor, in accordance with this part, shall--
 (1) determine the amount of the employer's withdrawal liability,
 (2) notify the employer of the amount of the withdrawal liability, and
 (3) collect the amount of the withdrawal liability from the employer."
 The amount of withdrawal liability is determined pursuant to Section 1381:
 "(a) If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.
 (b) For purposes of subsection (a) of this section--
 (1) The withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted--
 (A) first, by any de minimis reduction applicable under section 1389 of this title,
 (B) next, in the case of a partial withdrawal, in accordance with section 1386 of this title,
 (C) then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title, and
 (D) finally, in accordance with section 1405 of this title.
 (2) The term 'complete withdrawal' means a complete withdrawal described in section 1383 of this title.
 (3) The term 'partial withdrawal' means a partial withdrawal described in section 1385 of this title."
 
 
 [4]
 The trustees contend they filed the motion for reconsideration on July 22, 1983, and submit a copy of the motion bearing that filing date. Pocket Beverage asserts that the motion was filed on August 2, 1983, and refer to the district court's record, which contains a copy of the motion bearing an August 2 filing date. For purposes of this appeal, we shall assume the motion was filed on August 2, 1983, the date more favorable to the appellant's position
 
 
 [5]
 At the time, the plaintiff's action was pending before both the United States District Court for the Southern District of Mississippi and the state trial court in Mississippi
 
 
 [6]
 Rather, according to the Tenth Circuit, the proper procedure would have been to order the district court to transfer the case to the Oklahoma district court. See Koehring, 348 F.2d at 648