928 F.2d 1509
 19 Fed.R.Serv.3d 272
 CHRYSLER CREDIT CORPORATION, a Delaware corporation,
Plaintiff-Appellee,
v.
COUNTRY CHRYSLER, INC., an Oklahoma corporation; Max
Pepper; Muriel S. Pepper; Cindy Joan Pepper
Guterman, Defendants and Third-Party
Plaintiffs-Appellants,
v.
CHRYSLER CORPORATION, Third-Party Defendant.
 Nos. 89-6240, 89-6280.
 United States Court of Appeals,
Tenth Circuit.
 March 29, 1991.
 
 Louis W. Bullock (Patricia W. Bullock with him on the brief), of Bullock & Bullock, Tulsa, Okl., for defendants-appellants.
 Eric S. Eissenstat (Terry W. Tippens with him on the brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiff-appellee.
 Before HOLLOWAY, Chief Judge, BALDOCK, Circuit Judge and GREENE, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 Defendants-appellants Country Chrysler, Inc., Max Pepper, Muriel S. Pepper and Cindy Joan Pepper Guterman (the Peppers) appeal from the district court's 1) award of $255,000 actual and punitive damages, attorney's fees and costs to plaintiff-appellee Chrysler Credit Corporation and 2) imposition of $33,000 sanctions against them pursuant to Fed.R.Civ.P. 11. This action began in the federal district court for the Western District of Oklahoma. Judgment was granted to Chrysler Credit on its claim against the Peppers and the case subsequently transferred to the federal district court for the Eastern District of Michigan for resolution of the Peppers' counterclaims and third-party complaint. The Michigan court granted summary judgment against the Peppers on their counterclaims and third-party complaint, but declined to certify the Oklahoma judgment. Chrysler Credit then returned to the Oklahoma court seeking certification of its Oklahoma money judgment and Rule 11 sanctions. The Oklahoma court entered judgment against the Peppers on Chrysler Credit's claim and imposed Rule 11 sanctions against them.
 
 
 2
 Our jurisdiction over these consolidated appeals arises under 28 U.S.C. Sec. 1291. We hold that the Oklahoma court lost jurisdiction over this case when it transferred it to the Michigan court. The Oklahoma court thus lacked jurisdiction to enter judgment against the Peppers in June 1991 and to impose sanctions under Rule 11. We therefore reverse both the money judgment entered by the Oklahoma court in June 1989 and the sanction award. We remand with instructions to vacate both decisions for want of jurisdiction.
 
 I.
 
 3
 The labyrinthine history of this case involves parallel and simultaneous judicial proceedings in the Western District of Oklahoma and the Eastern District of Michigan. Despite the considerable overlap between the Oklahoma and Michigan proceedings, we discuss each seriatim.
 
 A. Western District of Oklahoma
 
 4
 Chrysler Credit Corp. is a Delaware corporation with its principal place of business located in Troy, Michigan. Country Chrysler, Inc. was an automobile dealership located in Guthrie, Oklahoma which sold Chrysler automobiles. Defendant Max Pepper was president of Country Chrysler, Cindy Pepper Guterman, vice-president and Muriel Pepper, secretary. All three also were shareholders. From July 1983 until February 1986, Chrysler Credit provided wholesale vehicle inventory financing to Country Chrysler for the purchase of automobiles from Chrysler Corporation. Chrysler Credit advanced funds to Country Chrysler and retained a security interest in all purchased vehicles. Country Chrysler agreed to remit the outstanding balance to Chrysler Credit as each vehicle was sold at retail.
 
 
 5
 In May 1986, Chrysler Credit brought suit in the Western District of Oklahoma alleging that the Peppers sold vehicles "out of trust," i.e., sold vehicles in which Chrysler Credit held a security interest without remitting the proceeds. Chrysler Credit sought actual and punitive damages, an accounting of all proceeds, possession of all remaining vehicles or proceeds and satisfaction of personal guarantees executed by the individual defendants. The Peppers counterclaimed alleging eight causes of action against Chrysler Credit: (1) violation of the Automobile Dealers Day in Court Act, 15 U.S.C. Sec. 1222; (2) violation of the Oklahoma Motor Vehicle Commission Act, Okla.Stat.Ann. tit. 47 Sec. 565(9)(a) (West 1988); (3) intentional interference with prospective contractual relations; (4) violations of the Sherman and Clayton Acts, 15 U.S.C. Secs. 1 & 14; (5) violation of Sec. 2 of the Sherman Act, 15 U.S.C. Sec. 2; (6) violation of the Oklahoma Antitrust Statutes, Okla.Stat.Ann. tit. 15 Sec. 217 & tit. 79 Sec. 1 (West 1966 & 1990 Supp.); (7) common law fraud; and (8) breach of contract. The Peppers also joined Chrysler Corporation as a third-party defendant. Chrysler Corporation moved to sever the Peppers' counterclaim from the underlying cause of action pursuant to Fed.R.Civ.P. 21 and 42(b), and to dismiss or transfer the third-party claims to Michigan. Rec. vol. II, doc. 71 at 13. Chrysler Credit also sought to sever the Peppers' counterclaims from their action pursuant to Fed.R.Civ.P. 42(b). Rec. vol. II, doc. 72. The district court found that "the complexity of the issues, the substantive difference in the claims, the availability of a jury, the status of discovery, the separate nature of the proof and the real possibility of confusion render this a proper case for bifurcation under Rule 42." Rec. vol. II, doc. 74 at 1 (emphasis supplied). It therefore ordered that Chrysler Credit's claim be tried separately from the Peppers' counterclaim and third-party complaint. Id.
 
 
 6
 On July 29, 1987, the district court rendered findings of fact and conclusions of law on Chrysler Credit's claim. The court found that the Peppers had sold vehicles out of trust and entered judgment against them in the amount of $211,419. Rec. vol. II, doc. 136, ex. 3 & 4. On October 14, 1987, the court assessed $18,872 attorney's fees against the Peppers, but took no action on Chrysler Credit's claim for punitive damages. Rec. vol. II, doc. 125 at 2. That same day, acting pursuant to 28 U.S.C. Sec. 1404(a), the district court ordered the case transferred to the Eastern District of Michigan where an identical action between the parties was pending.[1] Rec. vol. II, doc. 124. The district court docket sheet indicates that the original pleadings or documents were shipped to the Michigan clerk the same day. On October 23, 1987, the transferred case was docketed in the Michigan court.
 
 
 7
 On November 24, 1987, Chrysler Credit filed a motion in the Oklahoma court seeking certification of its money judgment pursuant to Fed.R.Civ.P. 54(b). The district judge replied with the following letter:
 
 November 25, 1987
 
 8
 The Court Clerk's Office inadvertently accepted for filing on November 24, 1987, your motion and brief for certification. As you are aware, this court transferred Case No. CIV-86-503-B to the Eastern District of Michigan on October 14, 1987. This court no longer has jurisdiction. As there no longer is a file for Case No. CIV-86-503-B in this court, your documents cannot be filed and should not have been accepted.
 
 
 9
 I have directed the Court Clerk to return your documents to you, along with this letter. If you wish to file any documents in CIV-86-503-B, such papers must be filed in Michigan.
 
 
 10
 Rec. vol. II, doc. 140, ex. C. A year later, the district court ordered that all of the exhibits from Chrysler Credit's claim be withdrawn from the clerk's office within fifteen days or be destroyed. Id., ex. D.
 
 B. Eastern District of Michigan
 
 11
 In February 1986, Chrysler Corporation filed case No. 86-CV-70735 against the Peppers in the Eastern District of Michigan alleging that they failed to honor dealer capital loan agreements or pay monies owed. The Peppers filed an identical counterclaim and third-party complaint against Chrysler Credit as in the Oklahoma action. When the Michigan court received the transferred Oklahoma action, it was designated No. 87-CV-73875-DT and consolidated with No. 86-CV-70735. In April 1988, Chrysler Credit filed a motion in the Michigan court seeking certification of the Oklahoma money judgment. The Michigan court found that the Oklahoma money judgment was not final because it would be subject to an offset if defendants prevailed on their counterclaims; consequently, it denied Chrysler Credit's motion. On September 14, 1988, the Michigan court granted summary judgment to Chrysler Credit on all of the Peppers' counterclaims. Chrysler Motors Corp. v. Country Chrysler, Nos. 86-CV-70735-DT & 87-CV-73875-DT, unpub. order (E.D.Mich. Sept. 14, 1988). On February 9, 1989, the Michigan court granted judgment under Rule 54(b) to Chrysler Credit on the Pepper's third-party claims, but declined to certify the Oklahoma money judgment. Chrysler Motors Corp. v. Country Chrysler, Nos. 86-CV-70735-DT & 87-CV-73875-DT, unpub. order at 7-8 (S.D.Mich. Feb. 9, 1989). Chrysler Credit moved for reconsideration of this order on February 23, 1989, but withdrew the motion on March 22 and elected not to appeal. The Michigan court granted summary judgment to Chrysler Corporation on April 7, 1989 on its complaint and one of the Peppers' counterclaims; the Peppers' remaining claims were dismissed.
 
 
 12
 The Peppers appealed both the Michigan court's grant of summary judgment and the Oklahoma money judgment to the Sixth Circuit. The Sixth Circuit held that the Pepper's appeal from the summary judgment in favor of Chrysler Corporation was premature because damages had not yet been calculated. Chrysler Motors Corp. v. Country Chrysler, Inc., No. 89-1472, unpub. order (6th Cir. July 31, 1989 [884 F.2d 578 (table) ]. As appellee, Chrysler Credit reversed its arguments with respect to the Oklahoma judgment contending that jurisdiction over the Oklahoma judgment remained in Oklahoma. The Sixth Circuit concluded:
 
 
 13
 [Chrysler] Credit ... contends that the Pepper's appeal from orders entered by the Oklahoma district court is not within this Court's jurisdiction. The Oklahoma court bifurcated the case, ruled on Credit's complaint and transferred the Peppers' counterclaim and third party complaint to Michigan. We note that the Oklahoma court recently entered final judgment for Credit on its complaint, and the Peppers appealed that judgment to the Tenth Circuit Court of Appeals. The portion of the case decided by the Oklahoma court is not within the Sixth Circuit's jurisdiction.
 
 
 14
 Id. at 3. The Sixth Circuit consequently dismissed the appeal from the Oklahoma judgment. Id. at 4.
 
 C. Western District of Oklahoma
 
 15
 On March 23, 1989, before the Peppers filed their notice of appeal to the Sixth Circuit, Chrysler Credit returned to the Western District of Oklahoma and filed a motion for certification of its 1987 money judgment. Rec. vol. II, doc. 135. Chrysler Credit argued that because the Pepper's claims had been disposed of by the Michigan court, the Oklahoma judgment was now final. Id., doc. 136. On April 10, 1989, the district court ordered the case "reopened." Rec. vol. II, doc 137. The Peppers then moved to stay the proceedings, arguing that jurisdiction over the Oklahoma money judgment remained in Michigan. Rec. vol. II, doc. 140. But the district court held, in contradiction to its November 25 letter, that "only the counterclaim and third-party complaint were transferred" in 1987 and that the rest of the action had been retained by the Oklahoma court. Rec. vol. II, doc 151 at 2-3. The Oklahoma court denied the Peppers' motion to stay the proceedings and, noting that they had advanced a contrary position before the Michigan court, ordered them to show cause why sanctions should not be imposed. Id. at 4. The Peppers then unsuccessfully sought a writ of mandamus and an application for a stay of proceedings in this court. Country Chrysler v. Honorable Luther L. Bohanon, No. 89-6183, unpub. order (10th Cir. June 13, 1989). On June 23, 1989, the Oklahoma court entered final judgment in favor of Chrysler Credit consisting of $211,419 actual damages, $25,000 punitive damages, $18,872 attorney's fees and costs. Rec. vol. II., doc. 168.
 
 
 16
 We note that the case never has been transferred back to the Western District of Oklahoma. Yet, after conducting an evidentiary hearing, the court then issued findings of fact and conclusions of law holding that the Peppers' conduct warranted sanctions based upon: 1) their adoption and prosecution of the counterclaim; 2) their objection to filing of foreign judgment; 3) their objection to Chrysler Credit's application for a hearing on punitive damages; and 4) their motion to vacate or stay the proceedings. Rec. vol. II., doc. 174. Acting pursuant to Fed.R.Civ.P. 11, the court assessed attorney's fees of $33,686 against the Peppers and their counsel. Rec. vol. II., doc. 175.
 
 II.
 
 17
 Congress enacted 28 U.S.C. Sec. 1404(a) in 1948 "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981) (quoting Van Dusen v. Barrack, 376 U.S. 612, 613, 84 S.Ct. 805, 808, 11 L.Ed.2d 945 (1964)). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court[2] may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. Sec. 1404(a). Although drafted in accordance with the forum non conveniens doctrine, the statute was intended to revise rather than merely codify the common law. Courts therefore enjoy greater discretion to transfer a cause pursuant to Sec. 1404(a) than to dismiss the action based upon forum non conveniens.[3] Piper Aircraft, 454 U.S. at 253, 102 S.Ct. at 264.
 
 
 18
 The party moving to transfer a case pursuant to Sec. 1404(a) bears the burden of establishing that the existing forum is inconvenient. Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567 (10th Cir.1978); Wm. A. Smith Contracting v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir.1972). But Sec. 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there. See Hoffman v. Blaski, 363 U.S. 335, 343-44, 80 S.Ct. 1084, 1089-90, 4 L.Ed.2d 1254 (1960); Morris v. Peterson, 759 F.2d 809, 812 (10th Cir.1985). Moreover, when a case is transferred under Sec. 1404(a), the transferee court must apply the same law as applicable in the transferor court, irrespective of whether the transfer was sought by the plaintiff or defendant. Ferens v. John Deere Co., 494 U.S. 516, 110 S.Ct. 1274, 1282-84, 108 L.Ed.2d 443 (1990).
 
 
 19
 "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting Van Dusen, 376 U.S. at 622, 84 S.Ct. at 812).
 
 
 20
 Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.
 
 
 21
 Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir.1967).
 
 
 22
 An action may be transferred under Sec. 1404(a) at any time during the pendency of the case, even after judgment has been entered. 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3844 at 334-35 (1986). Once transferred, the action retains its procedural identity. Danner v. Himmelfarb, 858 F.2d 515, 521 (9th Cir.1988), cert. denied, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). The transferee court's powers are coextensive with those of the transferor court; it may issue any order or render any judgment that could have been made in the transferor court had the transfer never taken place. Id.
 
 
 23
 "[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done." Magnetic Eng'g & Mfg. v. Dings Mfg., 178 F.2d 866, 868 (2d Cir.1950) (L. Hand, J.). Accordingly, traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including its transfer order. See In re Cragar Indus., 706 F.2d 503, 505 (5th Cir.1983); Roofing & Sheet Metal Serv. v. La Quinta Motor Inns, 689 F.2d 982, 986-87 (11th Cir.1982); Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 168-69 (3d Cir.1982) (evaluating Sec. 1406(a) transfer); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 110.13; 15 Federal Practice and Procedure Sec. 3846 at 359. Nevertheless,
 
 
 24
 law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.... Law of the case directs a court's discretion, it does not limit the tribunal's power.
 
 
 25
 Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (citations omitted). A prior ruling of a transferor court therefore may be reconsidered when the governing law has been changed by the subsequent decision of a higher court, see Crane Co. v. American Standard, 603 F.2d 244, 248-49 (2d Cir.1979), when new evidence becomes available, see Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir.1985), when a clear error has been committed or to prevent manifest injustice, see Arizona v. California, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8.[4]
 
 
 26
 Once the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer.[5] Roofing & Sheet Metal Serv., 689 F.2d at 988-89 n. 10; In Re Nine Mile Limited, 673 F.2d 242, 243 (8th Cir.1982); In re Southwestern Mobile Homes, 317 F.2d 65, 66 (5th Cir.1963). See Hyde Constr. v. Koehring Co., 348 F.2d 643, 648 (10th Cir.1965), rev'd on other grounds, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966). The date the papers in the transferred case are docketed in the transferee court, not the date of the transfer order, consequently forms the effective date that jurisdiction in the transferor court is terminated. Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir.1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); 15 Federal Practice and Procedure Sec. 3846 at 357. Cf Robbins v. Pocket Beverage Co., 779 F.2d 351, 355 (7th Cir.1985) (district court retained jurisdiction to vacate its transfer order where motion for reconsideration was granted before files were received by transferee court).
 
 
 27
 The date the papers in the transferred case are docketed in the transferee court also forms the effective date that appellate jurisdiction in the transferor circuit is terminated; the transfer order becomes unreviewable as of that date.[6] Belzberg, 834 F.2d at 733; In re Sosa, 712 F.2d 1479, 1480 (D.C.Cir.1983); Starnes v. McGuire, 512 F.2d 918, 924 (D.C.Cir.1974) (en banc); 15 Federal Practice and Procedure Sec. 3846 at 357. Because an appeal from a transfer order filed after the physical transfer of the record would be futile, the preferred approach is to delay physical transfer of the papers in the transferred case for a long enough time to allow the aggrieved party to file a mandamus petition.[7] Roofing & Sheet Metal Serv., 689 F.2d at 988-89 n. 10; Nine Mile Limited, 673 F.2d at 243; 15 Federal Practice and Procedure Sec. 3846 at 357.
 
 
 28
 The question whether a transferee circuit has jurisdiction to review the decisions of a transferor district court is one over which the circuits are split. Steinman, Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation, 135 U.Penn.L.Rev. 595, 642-44 (1987). This court held in McGeorge v. Continental Airlines, 871 F.2d 952, 954 (10th Cir.1989), that the transferee circuit cannot exercise direct review over the rulings of the transferor district court when a case is transferred out-of-circuit. McGeorge can be read to conflict with this court's earlier holding in In re Dalton, 733 F.2d 710 (10th Cir.1984). There, petitioners sought a writ of mandamus prohibiting the Colorado district court from transferring an action to the District of Arizona pursuant to Sec. 1404(a). Among the criteria this court applied in determining whether mandamus would lie was whether petitioner would be damaged or prejudiced by the transfer in a way not correctable on appeal. Id. at 717. We concluded:
 
 
 29
 The possibility of an appeal from the final judgment in the transferee circuit, even with the difficult burden of demonstrating prejudice there, will preclude relief by writ. The remedy of a future appeal from a final judgment in the transferee court is inadequate and therefore justifies mandamus only when the appeal is totally unavailable or when it cannot correct extraordinary hardship because of the particular circumstances.
 
 
 30
 Id. (emphasis supplied, citations omitted). At least one commentator has interpreted our language as holding that the appellate court in the transferee district has jurisdiction to review rulings by the transferor district court, an interpretation directly contrary to our holding in McGeorge. See Steinman, 125 U.Penn.L.Rev. at 641 n. 152. In McGeorge, appellants sought direct review of rulings made by the district court in the transferor circuit. We held that a court of appeals in the transferee circuit lacks jurisdiction to review the judgments of district court in the transferor circuit. But nothing in McGeorge precludes the parties from arguing or the transferee circuit from reviewing whether the transferee district court correctly applied the law of the case in the transferred action.
 
 
 31
 Review of the transferee court's application of law of the case provides a limited avenue through which the transferee appellate court may address the merits of the underlying issue. See, e.g., Nascone v. Spudnuts, Inc., 735 F.2d 763, 765-66 (3d Cir.1984) (court of appeals in transferee circuit may review district court's decision not to retransfer case); Linnell v. Sloan, 636 F.2d 65, 67 (4th Cir.1980) (transferee appellate court has jurisdiction to review transfer order once party moves for retransfer in transferee district court). Cf. Purex Corp. v. St. Louis Nat'l Stockyards, 374 F.2d 998, 1000 (7th Cir.) (transferee circuit lacks power to adjudicate allegedly erroneous transfer absent motion to retransfer made in transferee district court), cert. denied, 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967). Review of the transferee court's application of law of the case generally is limited to the question of whether the transferor court's rulings were "clearly erroneous and would work a manifest injustice." Arizona v. California, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983). See Gage v. General Motors, 796 F.2d 345, 349-50 (10th Cir.1988). Certainly, this standard is far more deferential than direct appellate review. But Dalton only held that there was a "possibility" of review in the transferee circuit, that such review was not "totally unavailable." 733 F.2d at 717. Although appellate review of a district court's application of the law of the case doctrine is governed by the limited standard of clear error and manifest injustice, such review is not "totally unavailable."
 
 
 32
 The prohibition in McGeorge against appellate review of transferor court rulings should not be read as precluding review of the application of law of the case by the transferee district court in this circuit. Accordingly, our language in Dalton suggesting that appellate courts may review the transferee court's application of law of the case to the rulings of the transferor court may be harmonized with our holding in McGeorge that direct review of such actions is prohibited. We now endorse such a harmonious reading of Dalton and McGeorge.
 
 
 33
 Section 1404(a) only authorizes the transfer of an entire action, not individual claims. Wyndham Assoc. v. Bintliff, 398 F.2d 614, 618 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Cain v. New York State Bd. of Elections, 630 F.Supp. 221, 226 (E.D.N.Y.1986); 15 Federal Practice and Procedure Sec. 3846 at 363. A court acting under Sec. 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section "contemplates a plenary transfer" of the entire case. In re Flight Transp. Corp. Securities Litigation, 764 F.2d 515, 516 (8th Cir.1985) (Pennsylvania district court lacked authority under Sec. 1404(a) to transfer case only for purposes of trial and retain jurisdiction over the rest of the action). But where certain claims in an action are properly severed under Fed.R.Civ.P. 21, two separate actions result;[8] a district court may transfer one action while retaining jurisdiction over the other. Wyndham Assoc., 398 F.2d at 618; 15 Federal Practice and Procedure Sec. 3846 at 363 n. 19; 3A Moore's Federal Practice p 21.05 at 43-44 (severance and transfer under Rule 21 and Sec. 1404(a) appropriate on rare occasions). See, e.g., Carver v. Knox County, Tenn., 887 F.2d 1287, 1293 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1949, 109 L.Ed.2d 311 (1990); Toro Co. v. Alsop, 565 F.2d 998, 1000-1001 (8th Cir.1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1988). When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer. See, e.g., Cain, 630 F.Supp. at 226; Hess v. Gray, 85 F.R.D. 15, 22-27 (N.D.Ill.1979); Mobil Oil v. W.R. Grace & Co., 334 F.Supp. 117, 121-24 (S.D.Tex.1971); General Tire & Rubber Co. v. Jefferson Chem. Co., 50 F.R.D. 112, 114-16 (S.D.N.Y.1970); Leesona Corp. v. Cotwool Mfg., 204 F.Supp. 139, 140-41 (W.D.S.C.1962), appeal dismissed, 308 F.2d 895 (4th Cir.1962). But see State of Alabama v. Blue Bird Body Co., 71 F.R.D. 606 (M.D.Ala.1976) (Sec. 1404(a) transfer after Rule 42(b) bifurcation), aff'd in part and rev'd in part, 573 F.2d 309 (5th Cir.1978). The severed case is transferred in its entirety while the retained case remains in its entirety in the transferor court. 15 Federal Practice and Procedure Sec. 3845 at 478; see also id. Sec. 3825 at 351-52 (court may sever and transfer claims against some defendants while retaining jurisdiction over other defendants).
 
 III.
 A.
 
 34
 Although the Oklahoma court bifurcated the Peppers' counterclaims and third-party complaint from Chrysler Credit's claim, the court explicitly stated that it was bifurcating the case pursuant to Fed.R.Civ.P. 42(b). Thus, while Chrysler Credit's claim was tried separately from the Peppers' counterclaims and third-party complaint, all claims remained part of one single action which would result in a single judgment. See 9 Federal Practice & Procedure Sec. 2387 at 277; 3A Moore's Federal Practice p 21.05 at 35. The district court's order of transfer simply cannot be construed as a Rule 21 severance; nowhere in the order does the court refer to Rule 21 or imply that two separate actions are being created. The Oklahoma court's letter of November 25 declining to accept Chrysler Credit's motion for Rule 54(b) certification of its judgment after transfer is further evidence that the Oklahoma court intended to transfer the entire action to the Michigan court. Irrespective of whether the Oklahoma court intended to retain jurisdiction over Chrysler's claim, however, it lacked authority under Sec. 1404(a) to transfer a portion of the single action to Michigan for one purpose while retaining jurisdiction over the remainder. See In re Flight Transp., 764 F.2d at 516; Wyndham Assoc., 398 F.2d at 618. Had the Oklahoma court certified Chrysler Credit's judgment under Rule 54(b) prior to transfer, it effectively would have severed the action and allowed the counterclaim to remain in the circuit. See McGeorge, 871 F.2d at 954. But in the absence of a Rule 54(b) certification or a Rule 21 severance, we must conclude that the Oklahoma court transferred the entire action to the Michigan court on October 14.
 
 
 35
 The district court issued its transfer order and sent the original pleadings to the Eastern District of Michigan on October 14, 1987;[9] consequently, it lost jurisdiction over this case on October 23, 1987, the day the case was docketed in the Michigan court. See Roofing & Sheet Metal Serv., 689 F.2d at 988-89 n. 10; Nine Mile Limited, 673 F.2d at 243. After October 14, the court had no jurisdiction to revoke, modify or clarify its transfer order; jurisdiction was vested exclusively in the Michigan court. See Robbins, 779 F.2d at 355. The Oklahoma court therefore lacked jurisdiction to "reopen" the case in April 1989 as the Michigan court never retransferred the action.
 
 
 36
 Once this case was transferred to the Michigan court, all rulings made prior to transfer were law of the case. See Cragar Indus., 706 F.2d at 503; Roofing & Sheet Metal Serv., 689 F.2d at 986-87; Hayman Cash Register, 669 F.2d at 168-69. Consequently, the Oklahoma money judgment remains part of the Michigan action and must be prosecuted there. Of course, the Michigan court was not obligated to certify the Oklahoma judgment in robotic fashion; in the Sixth Circuit, the law of the case doctrine is sufficiently flexible to permit departure from rulings in the transferor circuit where clearly warranted. See Skil Corp. v. Millers Falls Co., 541 F.2d 554, 558 (6th Cir.), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976). Subsequent decisional authority, new evidence or clear error by the Oklahoma court would preclude rigid application of law of the case to the Oklahoma money judgment. See Arizona v. California, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8.
 
 
 37
 We recognize that holding that jurisdiction over Chrysler Credit's claim remains vested in Michigan contradicts the express holding of the Sixth Circuit. We believe, however, that the Sixth Circuit was misled by the contradictory[10] positions taken both by counsel and by the Oklahoma court. After repeatedly seeking certification of its Oklahoma money judgment in the Michigan court, Chrysler Credit never appealed the Michigan court's denial of its motion. Instead, before the Peppers even filed their notice of appeal from the Michigan judgment, Chrysler Credit returned to Oklahoma and convinced the district court that it had retained jurisdiction over its money judgment all along. By the time the Sixth Circuit concluded that it lacked jurisdiction over the Oklahoma money judgment, the Oklahoma court already had entered judgment in the same claim, contrary to its prior actions and statements.[11] Even if the Oklahoma court had not erroneously concluded that it retained jurisdiction over Chrysler Credit's money judgment, the Sixth Circuit was not in a position to hear an appeal from that judgment. First, as the Sixth Circuit noted in its order, no final judgment had been entered on the case and certification had not been granted on the Oklahoma money judgment. Hence, in the absence of a Rule 54(b) certification by the Michigan court, the Sixth Circuit had no jurisdiction to review the Oklahoma money judgment, even though jurisdiction over that claim properly was vested in the Michigan court. Second, Chrysler Credit did not appeal the Michigan court's denial of its certification motion and appellate courts do not "reach out to decide an issue when the party adversely affected ha[s] not appealed the adverse order." Snell v. Tunnell, 920 F.2d 673, 676 (10th Cir.1990).[12]
 
 
 38
 Splitting the circuits always is something we approach with trepidation. We are especially loath to contradict our sister circuit where our contrary ruling involves the same case. Nevertheless, after carefully reviewing the record and the governing legal authority, we have arrived at the conclusion that the Oklahoma court lacked jurisdiction over Chrysler Credit's money judgment. Chrysler Credit either must collect its Oklahoma money judgment in the Michigan court or seek to have the case retransferred to the Oklahoma court.[13] Absent a retransfer of this case, jurisdiction remains in the Michigan court and the Oklahoma court is precluded from entering any ruling regarding this case.
 
 B.
 
 39
 Chrysler Credit contends that even if the Oklahoma court's intention was ambiguous in its October 1987 transfer order, its May 1989 order stating that only the counterclaims and third-party complaint were transferred constituted a proper clarification under Fed.R.Civ.P. 60(a). We disagree. Rule 60(a) "can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." 11 Federal Practice and Procedure Sec. 2854 at 149; Allied Materials Corp. v. Superior Prod. Co., 620 F.2d 224, 226 (10th Cir.1980). In In re Galiardi, 745 F.2d 335 (5th Cir.1984), defendants moved to transfer a case from Texas to New York both on the grounds of Sec. 1404(a) (inconvenient venue) and Sec. 1406(a) (improper venue). The district court in Texas granted the motion without specifying whether the transfer was pursuant to Sec. 1404(a) or Sec. 1406(a). The New York district court construed the Texas court's transfer order as a Sec. 1404(a) transfer and consequently ruled that Texas law applied to the action. See Ferens, 110 S.Ct. at 1283. Defendants returned to the transferor court seeking clarification of the court's transfer order pursuant to Fed.R.Civ.P. 60(a), whereupon the court entered an order amending its transfer order holding that the case was transferred for improper venue pursuant to Sec. 1406. Holding that Rule 60(a) "does not grant a district court carte blanche to supplement by amendment an earlier order by what is subsequently claimed to be an oversight or omission," the Fifth Circuit concluded that "the Texas district court lacked jurisdiction in 1984 to amend its 1982 transfer order." Galiardi, 745 F.2d at 337.
 
 
 40
 The Fifth Circuit's reasoning in Galiardi is persuasive. The district court divested itself of jurisdiction when the record was docketed in the Michigan court; Rule 60(a) cannot be invoked to correct an invalid transfer or restore jurisdiction where none exists. Moreover, in the case before us, the Oklahoma court's explicit reference to Rule 42(b) in its bifurcation order, the text of its transfer order and its November 25 letter clearly establish that the court intended to transfer the entire case. The fact that the court subsequently recognized the consequences of its action is insufficient to invoke Rule 60(a). See Allied Materials, 620 F.2d at 226.
 
 C.
 
 41
 We finally must address the effect of the Supreme Court's recent decision in Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), on the Oklahoma court's jurisdiction to impose Rule 11 sanctions on the basis of the Peppers' counterclaim which was transferred to the Michigan court. In Cooter & Gell, the Supreme Court was faced with the question of whether a plaintiff's voluntary dismissal of his action pursuant to Fed.R.Civ.P. 41(a)(1) deprived the district court of jurisdiction to impose Rule 11 sanctions. Stating that "a court must have the authority to consider whether there has been a violation of [Rule 11] regardless of the dismissal of the underlying action[,]" the Supreme Court declined to hold that a Rule 41(a)(1) dismissal terminated the court's authority to impose sanctions. Id. 110 S.Ct. at 2455. The Court reasoned that the harm to the legal process that Rule 11 is intended to protect against can occur even when a plaintiff dismisses a frivolous claim under Rule 41(a)(1). Id. at 2457. Thus, imposition of sanctions may take place after a Rule 41(a)(1) dismissal.
 
 
 42
 We do not see the holding in Cooter & Gell as controlling upon the instant case. The essence of the Supreme Court's holding in Cooter & Gell is that where an ethical violation is committed, the district court's jurisdiction to punish that violation cannot be extinguished by voluntary dismissal. Here, the Peppers did not seek to dismiss their counterclaim or otherwise divest the Oklahoma court of jurisdiction over it. Rather, the entire action was transferred to another jurisdiction where the Peppers' counterclaims were litigated to completion. The Michigan court was fully competent to adjudicate any sanctions issues arising out of the Peppers' counterclaim. We do not read Cooter & Gell as authorizing a district court to impose Rule 11 sanctions for conduct arising out of a case which it lacks jurisdiction over, when such jurisdiction clearly is vested in another court.[14]
 
 
 43
 The district court's June 1989 judgment and its sanction award are REVERSED and REMANDED with instructions to VACATE for want of jurisdiction.
 
 
 
 *
 The Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 While observing that the Peppers had filed a notice of appeal on Chrysler Credit's money judgment, the Oklahoma district court concluded that such notice was premature because, absent a final judgment or Rule 54(b) certification, no final judgment was in place. This court subsequently dismissed the Peppers' appeal as premature because both the counterclaim and the third-party complaint remained pending and no Rule 54(b) certification had issued. Chrysler Credit Corp. v. Country Chrysler, No. 87-2424, unpub. order at 2 (10th Cir. Feb. 24, 1988)
 
 
 [2]
 Although Sec. 1404(a) only speaks of district courts, the Supreme Court has held that the statute does not preclude transfer by appellate courts "where unusual circumstances indicate the necessity thereof...." Koehring Co. v. Hyde Constr., 382 U.S. 362, 365, 86 S.Ct. 522, 524, 15 L.Ed.2d 416 (1966)
 
 
 [3]
 Section 1404(a) transfers must be distinguished from transfers carried out under 28 U.S.C. Sec. 1406(a). In the case of Sec. 1404(a), both the transferor and the transferee court have venue over the action, but it is more efficient to prosecute the action in the latter court. Conversely, in the case of Sec. 1406(a), the transferor court lacks venue and must transfer the action in order for it to proceed
 
 
 [4]
 See, e.g., Blaski v. Hoffman, 260 F.2d 317, 322 (7th Cir.1958) ("[W]e think the decision of the Fifth Circuit in this [transferred] matter is erroneous. Such being the case, we are under no more obligation to follow it as the law of the case than that Circuit would be to follow what it considers an erroneous decision by this Court."), aff'd on other grounds, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)
 
 
 [5]
 In Koehring Co. v. Hyde Constr., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966), the Supreme Court suggested in a footnote that the transferor court "may lose jurisdiction" before the physical transfer of the record. See id. at 365 n. 4, 86 S.Ct. at 524 n. 4. However, subsequent interpretation of Koehring has limited application of this language to cases involving "extraordinary intervention by an appellate court, with an explicit assertion that its transfer order is instanter." Robbins v. Pocket Beverage Co., 779 F.2d 351, 355 (7th Cir.1985)
 
 
 [6]
 Of course, the mere transfer of the record cannot ratify an otherwise invalid transfer. Farrell v. Wyatt, 408 F.2d 662, 664 (2d Cir.1969). Hence, where a district court transfers a case without proper authority or the transferee court lacks jurisdiction over the case, a valid transfer has not been effectuated and appellate jurisdiction remains in the transferor circuit. Id
 
 
 [7]
 A district court's order granting or denying a transfer pursuant to Sec. 1404(a) is an interlocutory order not immediately appealable under 28 U.S.C. Sec. 1291. Equifax Serv. v. Hitz, 905 F.2d 1355, 1362 (10th Cir.1990); In re Dalton, 733 F.2d 710, 714-15 (10th Cir.1984), cert. dismissed, 469 U.S. 1185, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985). The party opposing transfer either may seek certification under 28 U.S.C. 1292(b) to appeal the transfer or else petition for mandamus under the All Writs Act, 28 U.S.C. Sec. 1651. See Hustler Magazine v. United States District Court, 790 F.2d 69, 70 (10th Cir.1986). But where the transferor court has entered partial judgment under Rule 54(b) prior to transfer, the court of appeals in the transferor circuit has jurisdiction to review the question, irrespective of whether other issues in the case have been transferred out-of-circuit. McGeorge v. Continental Airlines, 871 F.2d 952, 954 (10th Cir.1989)
 
 
 [8]
 Separate trials ordered pursuant to Fed.R.Civ.P. 42(b) must be distinguished from a severance under Rule 21. Under Rule 42:
 The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues....
 Fed.R.Civ.P. 42(b). Conversely, Rule 21 allows "[a]ny claim against a party [to] be severed and proceeded with separately." Fed.R.Civ.P. 21. Separate trials under Rule 42(b) result in a single judgment while claims severed under Rule 21 become independent actions with separate judgments entered in each. 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2387 at 277 (1971 & 1990 Supp.); 3A J. Moore, Moore's Federal Practice p 21.05 at 21-34-35 (1990). While judgment on a claim severed under Rule 21 is final for purposes of appeal, judgment on a claim bifurcated under Rule 42(b) is not an appealable final judgment, absent a Rule 54(b) certification. See Vann v. Citicorp Sav. of Ill., 891 F.2d 1507, 1511 (11th Cir.1990); United States v. O'Neil, 709 F.2d 361, 368 & n. 6 (5th Cir.1983); Belmont Place Assoc. v. Blyth, Eastman, Dillon & Co., 565 F.2d 1322, 1323 (5th Cir.1978); 3A Moore's Federal Practice p 21.05 at 35.
 
 
 [9]
 Technically, the district court should have allowed the parties time to seek certification or file a mandamus petition before physically transferring the record and divesting this court of jurisdiction over the appeal. See Wm. A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir.1974). However, because the record does not indicate that such a petition would have been filed, this oversight proved harmless
 
 
 [10]
 We recognize that, at various stages in the proceedings, both parties took inconsistent positions with respect to the jurisdiction of the Michigan court over the Oklahoma judgment. Nevertheless, this court does not recognize the doctrine of judicial estoppel. United States v. 49.01 Acres of Land, 802 F.2d 387, 390 (10th Cir.1986). Whatever positions the parties have taken, we possess an independent duty to inquire into our jurisdiction and the failure of the parties to advance the argument properly below does not preclude our inquiry here
 
 
 [11]
 Faced with this fait accompli, the Sixth Circuit probably concluded that, given its inability to review the actions of the Oklahoma district court, comity between the circuits required it to defer to the Oklahoma district court and construe the transfer order as a Rule 21 severance. Because of our inherent authority to review the actions of the district courts within this circuit, see 28 U.S.C. 1294(1), we decline to display similar solicitude toward the Oklahoma district court's action
 
 
 [12]
 We recognize, of course, that "it is very nearly impossible" to appeal the denial of a Rule 54(b) certification and that the only possible remedy may be mandamus. See Tri-State Generation & Trans. v. Shoshone R. Power, 874 F.2d 1346, 1368-69 (10th Cir.1989) (Baldock, J., dissenting)
 
 
 [13]
 We have no authority to order the Michigan court to retransfer the action back to the Oklahoma court. See McGeorge v. Continental Airlines, 871 F.2d 952, 954 (10th Cir.1989). Our only power would be to direct the Oklahoma court to request that the Michigan court retransfer the action. See In Re Nine Mile Limited, 673 F.2d 242, 244 (8th Cir.1982). But because we do not wish to decide for Chrysler Credit whether to proceed in Michigan or Oklahoma, we decline to express an opinion on where this action should be concluded
 
 
 [14]
 Of course, a district court retains the inherent authority under Rule 11 to sanction unethical conduct practiced before it, even if the court lacks jurisdiction to rule on the merits of the case. See Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990)