

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2000

# JoAnn Patenaude, et al.

Precedential or Non-Precedential:

Docket 99-1540

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"JoAnn Patenaude, et al." (2000). *2000 Decisions.* Paper 75.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/75

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 11, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1540

IN RE: JOANN PATENAUDE, et al.

Petitioners

On Petition for Writ of Mandamus from
Order Denying Motion to Remand of the
Judicial Panel on Multidistrict Litigation
(Related to D.C. No. MDL 875)

Argued January 28, 2000

BEFORE: GREENBERG, ROTH and STAPLETON,
Circuit Judges

(Opinion filed April 11, 2000)

        Steven R. Baughman (Argued)
        Baron & Budd
        3102 Oak Lawn Avenue
        The Centrum, Suite 1100
        Dallas, TX 75219
         and
        Jeffrey S. Mutnick
        Landye, Bennett, Blumstein
        3500 Wells Fargo Center
        1300 S.W. Fifth Avenue
        Portland, OR 97201
         Attorneys for Petitioners

R. Cornelius Danaher, Jr.
Danaher, Tedford, Lagnese & Neal
21 Oak Street
Suite 700, Capitol Place
Hartford, CT 06016
 and
James J. Restivo, Jr.
Reed, Smith, Shaw & McClay
435 Sixth Avenue
Pittsburgh, PA 15219-1886
 and
Andrew J. Trevelise
Reed, Smith, Shaw & McClay
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103-7301
 Attorneys for Respondent
Pittsburgh Corning Corporation

Elizabeth R. Geise (Argued)
John D. Aldock
Shea & Gardner
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036-1872
 Attorneys for Respondents
Armstrong World Ind., Asbestos
Claims Mgt., Flexitallic Inc.,
Gaf Corp., Pfizer Inc., T&N PLC,
US Gypsum Co.

Robert H. Riley (Argued)
Schiff, Hardin & Waite
6600 Sears Tower
Chicago, IL 60606
 Attorney for Respondent
Owens Illinois, Inc.

2

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Petitioners are three groups of plaintiffs seeking damages for personal injury and wrongful death as a result of exposure to asbestos. Respondents are some of the defendants in some of the cases brought by the plaintiffs. The plaintiffs' claims were initially filed in the Northern District of New York (the "New York plaintiffs"), the Northern District of Georgia (the "Georgia plaintiffs") and the District of Oregon (the "Oregon plaintiffs"). Pursuant to 28 U.S.C.  1407(a), the plaintiffs' claims were transferred by the Judicial Panel on Multidistrict Litigation (JPML) to Multidistrict Litigation No. 875 ("MDL No. 875"), which is pending in the United States District Court for the Eastern District of Pennsylvania (the "transferee court").

At various times during the past seven years, some of the Oregon plaintiffs have filed motions for suggestion of remand with the transferee court. The last such motion was filed in May 1997. Receiving no response, in May 1998 counsel for the Oregon plaintiffs appeared before the JPML to seek remand. On May 20, 1998, the JPML denied the Oregon plaintiffs' motion to remand.

Some, but not all, of the New York plaintiffs filed motions for a suggestion of remand with the transferee court in March 1998. By October 1998, the transferee court still had not acted on the motions, and ten of the New York plaintiffs filed a motion for remand with the JPML. In December, the New York plaintiffs filed a motion to clarify explaining that the prior motion to remand sought remand of all claims of all the New York plaintiffs, and not just the ten who had originally filed.

Some, but not all, of the Georgia plaintiffs filed motions for a suggestion of remand with the transferee court in April and May of 1998. In September 1998, the transferee court still had not acted on the motions for suggestion of remand, and all of the Georgia plaintiffs filed a motion for remand with the JPML. On February 5, 1999, the JPML

3

denied the New York and Georgia plaintiffs' motions for remand.

On June 29, 1999, all of the plaintiffs filed a petition for writ of mandamus asking this Court to order the JPML to remand their cases. We will deny the petition.

The parties have submitted affidavits that establish the following undisputed facts. The New York and Georgia plaintiffs' injuries range from the invariably fatal cancer mesothelioma, for which asbestos exposure is the only known cause, to pleural disease, a non-malignant scarring of the lining of the lung. Many have died from asbestos-related injuries, a good number of them during the pendency of MDL 875. The Oregon plaintiffs' injuries include malignancies and non-malignancies.

Following the creation of MDL 875, plaintiffs' and defendants' steering committees were organized that attempted to negotiate a global settlement of all asbestos claims. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 599-600 (1997). These negotiations, however, eventually "fell apart." Id. at 600. The Plaintiffs' Steering Committee (PSC) has not met since 1993, and has been completely inactive.[1] Subsequently, twenty defendants and certain former members of the PSC proposed the settlement class action that was at issue in Amchem. See id. at 600-01. The Supreme Court, however, rejected the class certification "[g]iven the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions." Id. at 624.

The affidavits assert that during the seven year pendency of MDL 875, "no common or global discovery has been sought or conducted by either Plaintiffs or Defendants in

_____

1. Although Defendant Owen-Illinois asserts that numerous members of the PSC met with defendants' representatives in 1999 and discussed the content of the master case management orders that various transferor courts should enter into were MDL 875 to disband, that meeting was never endorsed, organized or convened as a PSC gathering, nor was correspondence regarding the meeting issued to the full membership of the PSC, nor was it understood in advance that MDL 875 was even on the agenda for the meeting.

this action, and no common questions of law or fact have been the subject of global resolution by [the transferee] Court." (A. 16–17). Since 1991, all discovery, settlement or other litigation activity in MDL 875 has related either to the Amchem class action or to individual claims or groups of claims. In the past two years, the transferee court has overseen broad discovery regarding litigation screening companies, the physicians they employ, and the nature of their contracts with plaintiffs' firms.

Since the creation of MDL 875, the New York and Georgia plaintiffs have supplemented their answers to discovery on several occasions including as recently as April 1998, when they provided "updated information regarding their work history and exposures to Defendants' asbestos-containing products, and any new information regarding their medical status."[2] (A. 61). Their claims have also "been the subject of numerous settlement conferences conducted by the transferee court." (A. 61). Counsel for the New York and Georgia plaintiffs have submitted sworn affidavits stating that "with the exception of settlements of some plaintiffs' cases with some defendants, the settlement discussions have not resolved the cases." (A. 61). They further state that "in many instances, Defendants have failed to generate any monetary offer to settle Plaintiffs' cases; and in remaining cases, the Defendants have failed to offer settlement amounts that approach historical settlement values for similar claims." (A. 61).

Summaries of the New York docket sheets, however, reflect that individual plaintiffs have settled with anywhere from one to eleven defendants for amounts ranging from $3,500 to $739,136. The plaintiffs respond with an affidavit explaining that these settlement figures are inaccurate, in that they reflect gross amounts of settlement with the Johns Manville bankruptcy trust, even though plaintiffs will receive only ten per cent of that money, and in that they occasionally reflect double counting of settlements. The plaintiffs do not provide settlement information of their own, however, and, even accounting for these inaccuracies, the number and amount of settlements have in many cases

_____

2. Their original answers were filed prior to the inception of MDL 875.

5

been substantial. Moreover, other additional settlements may well have been signed, as the docket summaries show significant delays (in some cases, five years) between settlements being signed and their being entered on the docket. See also In re Asbestos Prods. Liab. Litig., 1996 U.S. Dist. LEXIS 13850, at *3 (E.D. Pa. Sept. 16, 1996) (of the 22,000 open cases on the docket in 1996, thousands were resolved but not yet dismissed and statistically removed). The New York docket summaries show that in each of the New York plaintiffs' cases, anywhere from two to eighteen defendants remain, with the average number being approximately eleven.

Neither party has provided information regarding the settlement status of the Georgia or Oregon plaintiffs' individual claims. The plaintiffs do indicate that the Georgia docket sheets show between one and five defendants remaining on each individual claim. Also, counsel for the Oregon plaintiffs indicates that prior to the establishment of MDL 875 the average length of time for resolution of an Oregon case was less than one year, whereas in MDL 875 the average exceeds five years. Although settlement conferences were held regarding the Oregon cases in 1995, 1996 and either 1998 or 1999, plaintiffs' efforts at settlement have been "to little avail." (A. 115–16).

The transferee court has stated, although not in the context of the plaintiffs' particular claims, that among its "overriding objectives" "[t]hroughout the course of the multidistrict litigation" is the court's "considered judicial opinion that the sick and dying, their widows and survivors should have their claims addressed first." Carlough v. Amchem, No. 93–215, at 8 (E.D. Pa. Apr. 15, 1993) (Mem. Op.). The court explained that it "steadfastly resisted motions to remand cases back to transferor courts unless the claimant was seriously ill or dying and all avenues of settlement were exhausted."3 Id. The court has also "advised counsel that motions to remand involving other

_____

3. The court also has a practice when it does remand cases of severing and retaining jurisdiction over punitive damages claims. (A. 59). However, this has not happened in any of the plaintiffs' cases, and thus is not an issue for consideration on this appeal.

6

circumstances would only serve to deplete resources otherwise available for settlements and thus would be routinely denied." Id.

The transferee court's Administrative Order No. 3, which relates to all asbestos actions, reflects this policy. This Order establishes that in attempting to resolve cases through negotiation, cases of mesothelioma and lung cancer with asbestosis will be "address[ed] . . . on a priority basis." (A. 47–48). However, the court cautioned that "special efforts to resolve hardship cases are not a substitute for broad–based negotiations designed to reduce docket the [sic] backlog." (A. 47). The Order establishes the procedures for exchange of information and negotiation to be followed in MDL 875. If this process does not produce a resolution, "the Court shall determine whether the matter is appropriate for immediate remand of the plaintiff 's compensatory damages claims." (A. 50). The Order states that only when all priority cases have been addressed will the court consider applying similar procedures to address cases of other malignant conditions and asbestosis and that "[a]s to cases that involve non–malignant conditions other than asbestosis, the Court intends to establish an inactive docket." (A. 53).

This process has resulted in numerous cases being resolved. As of late 1996, some 62,000 cases had been assigned to MDL 875 and approximately 40,000 had been resolved. See In re Asbestos Prods. Liab. Litig. (No. VI), 1996 U.S. Dist. LEXIS 13850, at *3 (E.D. Pa. Sept. 16, 1996) (Mem. Op.). The remaining 22,000 cases included thousands of cases that had been resolved but not yet dismissed. See id. As of January 1999, nearly 60,000 cases had been closed. See In re Asbestos Prods. Liab. Litig. (No. VI), No. 875, at 2 (JPML Feb. 5, 1999) (unpublished order denying remand). Thus, in 1997 and 1998, the transferee court closed nearly 10,000 cases a year.

This process has also resulted in approximately 1,000 actions or claims being remanded to the transferor courts. See id.

Plaintiffs' claims are all diversity actions brought in federal district court under 28 U.S.C.   1332. These claims

7

were transferred by the JPML to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. 1407. The JPML had jurisdiction to consider plaintiffs' motions to remand their actions to the transferor courts under 28 U.S.C. 1407(a). This Court has jurisdiction to review the JPML's denial of remand pursuant to 28 U.S.C. 1407(e). Section 1407(e) provides that JPML orders may be reviewed only by extraordinary writ pursuant to 28 U.S.C. 1651.

I.

"Traditionally, the writ of mandamus has been used `to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " E.g., In re Chambers Dev. Co., 148 F.3d 214, 223 (3d Cir. 1998) (quoting Will v. Calvert Fire Ins. Co., 437 U.S. 665, 661 (1978)). "The writ is a drastic remedy that `is seldom issued and its use is discouraged.' " Id. (quoting Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988)). The writ of mandamus should only be granted "in response to an act amounting to a judicial usurpation of power." Id. (quoting Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 462 (3d Cir. 1996)).

Two prerequisites for issuance of a writ are: "(1) that petitioner have no other adequate means to attain the desired relief, and (2) that petitioner meets its burden of showing that its right to the writ is clear and indisputable." Id. (quoting Hahnemann Univ. Hosp., 74 F.3d at 462). The petitioners have the burden of proving these two prerequisites. See Mallard v. U.S. Dist. Court , 490 U.S. 296, 309 (1989). As to the first prong, where there are practical avenues for seeking relief that are untried, this Court will ordinarily deny a petition for mandamus. See Hahnemann Univ. Hosp., 74 F.3d at 461 ("[W]here interlocutory appeal seems a practical but untried avenue, we will ordinarily deny a petition for mandamus."). However, formal exhaustion of futile remedies is not required. See id. at 462 (granting mandamus despite petitioner's failure to make a formal application for certification of an interlocutory appeal where an informal application had been made and not granted). As to the second prong, where a court

8

commits a clear error of law, a right to relief is clear and indisputable. See Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 861 (3d Cir. 1994). Moreover, mandamus can apply to discretionary acts where petitioners can demonstrate a "clear abuse of discretion." Mallard, 490 U.S. at 309.

"Even when these requirements are met, issuance of the writ is largely discretionary . . . ." In re Chambers Dev. Co., 148 F.3d at 223. "[I]t is within a court's discretion to refrain from issuing the writ even when the requirements for mandamus are technically satisfied. The availability of the writ `does not compel its exercise.' " Id. (quoting Lusardi, 855 F.2d at 1070).

In the instant case, ordinary appeal is not available; section 1407(e) provides that "[n]o proceedings for review of the panel may be permitted except by extraordinary writ." 28 U.S.C.  1407(e). Nonetheless, some of the plaintiffs have other practical means to obtain the relief sought. Those plaintiffs who did not seek a suggestion of remand from the transferee court before filing their motion to remand with the JPML have a practical but untried avenue for relief available to them. While it is true that plaintiffs are not required to seek a suggestion of remand prior to filing a motion to remand with the JPML, see JPML Rule 7.6(c), the JPML Rules state that "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court." JPML Rule 7.6(d). In view of this reluctance and the "great weight" that the Panel has consistently given to the transferee judge's determination that remand is appropriate, In re King Resources Co. Sec. Litig., 458 F. Supp. 220, 222 (JPML 1978), it is possible that were the plaintiffs to obtain a suggestion of remand from the transferee court, the JPML would grant their motions for remand.

The plaintiffs argue that there was no point in seeking a suggestion of remand from the transferee court, given that it had not issued such a suggestion for other plaintiffs grouped in their respective cause numbers who did seek such suggestions. They argue that the grounds for seeking remand were identical for all petitioners. However, a determination that coordinated or consolidated pretrial

9

proceedings have concluded and that remand is therefore appropriate is necessarily case-specific. Within each group, plaintiffs have had differing rates of success in settling claims and plaintiffs have experienced different injuries and therefore are impacted differently by the priority policy reflected in Administrative Order No. 3. Merely because some plaintiffs have had their requests for suggestions of remand go unanswered does not mean that it is futile for other plaintiffs to make such requests. Indeed, the transferee court has suggested remand in close to 1000 cases. See In re Asbestos Prods. Liab. Litig. (No. VI), No. 875 (JPML Feb. 5, 1999) (unpublished order denying remand).

Thus, only those plaintiffs who actually sought suggestion of remand from the transferee court have satisfied the first prong of the mandamus inquiry.

II.

The remaining plaintiffs have not demonstrated a clear and indisputable right to remand. Section 1407(a) provides that:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation . . . upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, that the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

28 U.S.C. 1407(a) (emphasis added). Thus, the statute imposes two limitations on the kinds of proceedings that the transferee court may conduct: they must be (1)

10

coordinated or consolidated and (2) pretrial. See Lexecon
Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26,
33-34 (1998). Moreover, the statute "obligates the Panel to
remand any pending case to its originating court when, at
the latest, those pretrial proceedings have run their
course," which obligation is "impervious to judicial
discretion." Id. at 34-35. The plaintiffs acknowledge that
individual settlement negotiations and discovery continue
in MDL 875 and the docket sheets show a pattern of
settlements continuing through 1999.[4] They argue,
however, that individual settlement negotiations and
discovery do not constitute "coordinated or consolidated
pretrial proceedings," that all "coordinated or consolidated
pretrial proceedings" have concluded, and that they
therefore have a clear and indisputable right to relief.

The Supreme Court's decision in Lexecon indicates that
the phrase "coordinated or consolidated" is to be
interpreted broadly. See id. at 33-34. Lexecon was a suit for
malicious prosecution, abuse of process, tortious
interference, commercial disparagement and defamation
arising out of the defendant law firm's conduct as counsel
in a prior class action brought against the plaintiff Lexecon
and others for violations of securities laws. See id. at 28-29.
The class action against Lexecon had been transferred for
coordinated and consolidated pretrial proceedings under
1407(a) along with other cases arising out of the failure of
Lincoln Savings and Loan. See id. at 29. During the pretrial
proceedings, the class action plaintiffs and Lexecon reached
a "resolution" under which the claims against Lexecon were

_____

4. Although the petitioners downplay the success of these settlement
negotiations and state that results would have been much quicker in
their transferee districts, the standard for remand is that coordinated
pretrial proceedings be concluded, not that they provide the quickest
resolution of particular cases.

The petitioners' second supplemental affidavit suggests that settlement
negotiations in fact are not ongoing in that the remaining defendants
have stated conclusively that they will not settle until the cases are set
for trial. This affidavit, however, was not presented to either the
transferee court or the JPML. Therefore, insofar as the petitioner's
claims
are based on this evidence, they have a practical and untried avenue for
seeking relief and mandamus will not issue.

11

dismissed. See id. Lexecon then filed its malicious prosecution case, which was transferred by the JPML to the transferee court under 1407(a), albeit to a different judge. See id. at 29-30. In transferring, the Panel noted that Lexecon's claims

> share questions of fact with an as yet unapproved settlement involving Touche Ross, Lexecon, Inc. and the investor plaintiffs in the Lincoln Savings investor class actions in MDL-834 . . . [,] that . . . a massive document depository is located in the [transferee district] and . . . the Ninth Circuit has before it an appeal of an order . . . in MDL-834 which may be relevant to the Lexecon claims.

Id. at 30. Subsequently, however, the Ninth Circuit appeal was dismissed, the document depository was closed down, and the remaining parties to the Lincoln Savings litigation reached a final settlement on which final judgment was entered. See id. Lexecon then moved for suggestion of remand, which the law firm opposed because discovery was still incomplete. See id. The law firmfiled a countermotion requesting that the transferee court "transfer" the case to itself for trial under 1404(a). See id. The transferee court deferred ruling on these motions for three months, until after summary judgment and Rule 54(b) final judgment had been entered on all but the defamation claim. See id. at 30-31. At that point, the transferee court granted the law firm's motion to assign the case to itself for trial and denied Lexecon's motion for suggestion of remand. See id. at 31.

The Court framed the issue as "whether 1407(a) does permit a transferee court to entertain a 1404(a) transfer motion to keep the case for trial." Id. at 32. The Court stated that "[a]lthough [ 1407(a)] limits a transferee court's authority to the conduct of `coordinated or consolidated' proceedings and to those that are `pretrial,' these limitations alone raise no obvious bar to a transferee's retention of a case under 1404." Id. at 33-34 (emphasis added). The Court explained that "[i]f `consolidated' proceedings alone were authorized, there would be an argument that self-assignment of one or some cases out of many was not contemplated, but because the proceedings need only be coordinated, no such narrow limitation is apparent. " Id. at

12

34 (emphasis added). Thus, a proceeding that relates only to a single individual's case or claim can nonetheless be coordinated. The Court elaborated, "While it is certainly true that the instant case was not consolidated with any other for the purpose literally of litigating identical issues on common evidence, it is fair to say that proceedings to resolve pretrial matters were `coordinated' with the conduct of earlier cases sharing a common core . . . , if only by being brought before judges in a district where much of the evidence was to be found and overlapping issues had been considered." Id. (emphasis added). Even the fact that the case was being heard by a different judge, although it limited the prospects for coordination, did not eliminate them. See id. Neither, apparently, did the fact that all of the proceedings with which the individual action was "coordinated" had already concluded raise a bar. This is evident not only from the facts of the case, where all of the other cases had been reduced to final judgment when the case-specific motion was being considered, but also from the Court's use of the past tense in stating that it was enough that the case was "being brought before judges in a district where much of the evidence was to be found [even though the evidence depository had been closed] and overlapping issues had been considered." Id. (emphasis added). Moreover, the case suggests that it is not necessary that any one issue be common to all cases, so long as issues "overlap." Id.

This passage cannot be reconciled with the plaintiffs' argument that "coordinated or consolidated pretrial proceedings" are concluded when the transferee court ceases to conduct proceedings that are common to all. To be coordinated, it is not necessary that common issues are being contemporaneously addressed. In the instant case, it seems probable that "much of the evidence," at least regarding causation, is to be found in the transferee district. Id. Furthermore, overlapping issues "ha[ve] been considered": the transferee court oversaw the initial attempts at global settlement and set forth procedures applicable to all regarding the mandatory exchange of information, the negotiation process, and the prioritizing of cases. Moreover, the transferee court continues to conduct discovery regarding the use of litigation screenings that

13

overlaps many of the cases in MDL-875. Although there is
no allegation that litigation screenings were conducted in
any of the plaintiffs' individual cases, this issue is common
to many cases from many different transferor districts.
Thus, applying the reasoning of Lexecon, it appears that the
individual settlement negotiations and conferences that are
occurring in plaintiffs' cases are in fact "coordinated"
proceedings.

Furthermore, such proceedings are "pretrial.""[P]retrial,
as an adjective, means before trial-- . . . all judicial
proceedings before trial are pretrial proceedings." In re
Plumbing Fixture Cases, 298 F. Supp. 484, 494 (JPML
1968); Wright el al., Federal Practice and Procedure  3866
("Interpreted literally, the transferee court appears to have
control over all proceeding prior to trial[,]" including
discovery motions, motions to amend, to dismiss, for
summary judgment, and to determine class certification.).
Rule 16 of the Federal Rules of Civil Procedure, relating to
pretrial conferences, states that the court may require
conferences before trial for the purpose of "facilitating the
settlement of the case." Fed. R. Civ. Proc. 16(a)(5).
Therefore, there is no basis for concluding that settlement
conferences are not pretrial proceedings.

The legislative history of   1407 also demonstrates that
Congress intended transferee courts to have broad pretrial
authority.

> By the term "pretrial proceedings" the committee has
> reference to the practice and procedure which precede
> trial of an action. These generally involve deposition
> and discovery, and, of course, are governed by the
> Federal Rules of Civil Procedure. Under the Federal
> rules the transferee district court would have authority
> to render summary judgment, to control and limit
> pretrial proceedings, and to impose sanctions for
> failure to make discovery or comply with pretrial
> orders.

H.R. Rep. No. 1130 (1968), reprinted in 1968 U.S.C.C.A.N.
1898, 1900; see also Multidistrict Litigation: Hearings
Before the Subcommittee on Improvements in Judicial
Machinery of the Committee of the Judiciary, 89th Cong.

14

13 (1966) (testimony of Dean Neal) ("[T]he cases concerned would be brought within the control of a single district and so the very same powers provided by the Federal Rules of Civil Procedure should permit all of the same kinds of steps to be carried out by the presiding district judge."). Although the legislative history does not specifically mention settlement, it does indicate that the Federal Rules provide the measure of a transferee court's pretrial authority, and the Federal Rules allow for conferences to facilitate settlement.

The plaintiffs point to legislative history stating:

> The objective of the legislation is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the "just and efficient conduct" of such actions. The committee believes that the possibility for conflict and duplication in discovery and other pretrial procedures in related cases can be avoided or minimized by such centralized management. To accomplish this objective the bill provides for the transfer of venue of an action for the limited purpose of conducting coordinated pretrial proceedings.

H.R. Rep. 1130, 1968 U.S.C.C.A.N. at 1900. Centralized management of individual settlement negotiations is not inconsistent with the objective of providing "centralized management . . . to assure the `just and efficient conduct' of . . . actions." Id. Such centralized management avoids "the possibility of conflict and duplication" of, if nothing else, the judge's time and energy spent becoming familiar with the recurring issues of asbestos litigation, the major players and how best to facilitate settlement with particular defendants.

The plaintiffs also point to legislative history suggesting that Congress contemplated that additional discovery might be conducted following remand as evidence that such individual discovery is not appropriate for the transferee court. See Multidistrict Litigation: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee of the Judiciary, 89th Cong. 56 (1966); H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02. The House

15

Report states that "the committee recognizes that in most cases there will be a need for local discovery proceedings to supplement coordinated discovery proceedings, and that consequently remand . . . for this purpose is desirable." H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02. Furthermore, during the hearings, the following exchange occurred:

> SENATOR TYDINGS: The intent of the coordinating committee, . . . apparently, is that the necessary additional discovery with regard to issues of fact not national or not common to other cases could be conducted once the case was remanded . . . .
>
> Do you agree that the intent of the bill is to allow additional discovery after remand . . . , and if so, is the language of the legislation sufficiently broad to permit that?
>
> JUDGE MURRAH: Yes

Multidistrict Litigation: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee of the Judiciary, 89th Cong. 56 (1966).

All of these statements speak in discretionary terms: what "in most cases" is "desirable," what the statute "allows," and what the transferee court "could" do. Section 1407 expressly allows for remand "at or before the conclusion of . . . pretrial proceedings." 28 U.S.C. 1407(a) (emphasis added). Clearly, the Panel has the discretion to remand a case when everything that remains to be done is case-specific. This does not mean that consolidated proceedings have concluded at the point that only case-specific proceedings remain; rather, the court can at that point exercise its discretion to remand "before the conclusion of pretrial proceedings." 28 U.S.C. 1407(a).

For the same reason, the plaintiffs' citation to Panel decisions remanding cases prior to the conclusion of all pretrial proceedings is unavailing. See In re Air Crash Disaster at Tenerife, 461 F. Supp. 671 (JPML 1978); In re Evergreen Valley Project Litig., 435 F. Supp. 923 (JPML 1977). In each of these cases, the Panel exercised its discretion to remand, based on its finding that remand "will

16

serve the convenience of the parties and witnesses and will promote the just and efficient conduct of [the litigation]." In re Air Crash Disaster, 461 F. Supp. at 672. These remands were discretionary. In the instant case, where the possibility exists that even individual settlement

negotiations will be more efficient if facilitated by a judge who is intimately familiar with the general issues and many of the parties, and where in fact the record reflects that settlements are successfully being negotiated, one cannot say that the Panel abused its discretion in refusing to remand.

Lexecon suggests another limitation on the transferee court's authority in addition to the requirement that proceedings be both coordinated and pretrial. See Lexecon 523 U.S. at 34-39. After concluding that the requirement of "coordinated or consolidated" proceedings did not preclude the court from ruling on the transfer motion at issue, the court stated that, "at first blush," the requirement of pretrial proceedings suggests no reason why the court could not rule on such a motion. Id. at 34. Ultimately, however, the Court concluded that a  1404 transfer order was outside the scope of the transferee court's authority because a "necessary consequence of self-assignment by a transferee court [is that] it conclusively thwarts the Panel's capacity to obey the unconditional command of  1407(a)" to remand "at or before the conclusion of pretrial proceedings to the district from which it was transferred unless [the action] shall have been previously terminated." Id. at 36. In the instant case, however, conducting individual settlement conferences does not "conclusively thwart" the Panel's ability to remand. Unlike a  1404 transfer, which makes it impossible for the Panel to remand even though the action has not been terminated, settlement negotiations will either be successful, in which case the action will terminate, or they will eventually conclude and the action can be remanded at that point.

In conclusion, because individual settlement negotiations and conferences are ongoing in the plaintiffs' individual cases, and because the transferee court is conducting discovery on overlapping issues that affect many asbestos cases, even if not the plaintiffs', coordinated pretrial

17

proceedings have not concluded, and the plaintiffs have not demonstrated a clear and indisputable right to the relief they seek. Therefore the writ of mandamus will not issue.

III.

At times the plaintiffs appear to be arguing that the JPML abdicated its statutory duty when it relied on the fact that the transferee court had declined to issue a suggestion of remand as one basis for its own decision to deny the motion to remand. This policy is embodied in JPML Rule 7.6(d), which states that "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court." JPML Rule 7.6(c). Deference is not abdication, however, and the presence or absence of a remand recommendation from the transferee judge as a factor in the Panel's decision-making process seems to us entirely reasonable. Moreover, if plaintiffs had shown an abdication of statutory duty on the part of the Panel, it would not satisfy their burden of showing that they have a clear and indisputable right to the relief they seek, which is remand. To do that, they must clearly and indisputably show that coordinated pretrial proceedings have concluded in their cases, and that they have not done.

IV.

For the foregoing reasons, the petition for writ of mandamus will be denied.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18