## In re BRAND–NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION

### No. 997.

Judicial Panel on Multidistrict Litigation.

April 9, 2003.

Before WM. TERRELL HODGES, Chairman, JOHN F. KEENAN, MOREY L. SEAR,* BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN and J. FREDERICK MOTZ, Judges of the Panel.

* Judge Sear did not participate in the decision of this matter. All other Panel members par-

### OPINION AND REMAND ORDER

SELYA, Judge.

This matter is before the Judicial Panel on Multidistrict Litigation on the motion of various defendants [1] to vacate a conditional remand order (CRO), dated July 3, 2002, in which the Panel conditionally remanded the remaining Robinson–Patman Act claims in the seventeen actions listed in Appendix A to the district courts in which they were originally brought (and from which they previously had been transferred). For the reasons elucidated below, the Panel orders that the claims at issue, with a few exceptions (*see infra* n. 2), be remanded to the United States District Court for the Eastern District of New York.

The labyrinthine history of this litigation begins with the discovery of a compendium of alleged antitrust and price discrimination violations in the brand-name prescription drug industry. The plaintiffs in the various actions comprise over 400 retail drug stores ranging in size from small "mom and pop" pharmacies to large, multi-state chains. This disparate group of claimants banded together to allege that a number of manufacturers and wholesalers had conspired to fix the prices of brand-name prescriptions drugs.

Many of these suits were brought as class actions; they alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1. Others—none of which were styled as class actions—propounded not only Sherman Act claims but also claims arising under the Robinson–Patman Act, 15 U.S.C. § 13. Pursuant to orders of the Panel, all of these cases were transferred to the United States District Court for the Northern District of Illinois (the transferee court) for coordinated or consolidated pretrial proceedings as part of MDL No. 997. *See In re Brand–Name Prescription Drugs Antitrust Litig.*, MDL No. 997 (J.P.M.L. Feb. 4, 1994) (unpublished). The Panel designated Judge Charles P. Kocoras to preside over the centralized proceedings.

Extensive pretrial discovery took place under Judge Kocoras's astute supervision. In November 1994, Judge Kocoras certified a Sherman Act class. *See In re Brand–Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 1994 WL 663590, *6, 1994 U.S. Dist. LEXIS 16658, at *16 (N.D.Ill. Nov. 18, 1994). Most of the plaintiffs who had filed individual actions opted out of the class, *see* Fed. R.Civ.P. 23(c)(2), and continued to pursue both their Sherman Act and their Robinson–Patman Act claims.

In April 1995, Judge Kocoras entered a case-management order authorizing discovery to proceed on behalf of the twenty-four opt-out plaintiffs (the designated plaintiffs) against the five designated defendants. *See supra* note 1. This order distinguished between the two types of claims asserted by the designated plaintiffs.

ticipated in the decision of this matter under the "rule of necessity" in order to provide the forum created by the governing statute, 28 U.S.C. § 1407. *See In re Wireless Tel. Radio Frequency Emissions Products Liab. Litig.*, 170 F.Supp.2d 1356, 1357–58 (Jud.Pan. Mult.Lit.2001).

1. The transferee court, while establishing rules for managing the Robinson–Patman Act claims, created the designated parties. *See In re Brand–Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 2001 WL 59035, *1, 2001 U.S. Dist. LEXIS 1862, at *7 (N.D.Ill. Jan. 19, 2001). The original designated defendants were American Home Products, Ciba–Geigy Corp., Glaxo Wellcome Inc., SmithKline Beecham Corp., and G.D. Scarle & Co. American Home and Glaxo have settled with all of the designated plaintiffs, while Ciba–Geigy and SmithKline Beecham have settled with some of the designated plaintiffs.

The Sherman Act class action ultimately ended in the entry of summary judgment for the defendants. *In re Brand–Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 2000 WL 204064, **5–6, 2000 U.S. Dist. LEXIS 1750, at *15–*16 (N.D.Ill. Feb. 10, 2000). The designated plaintiffs' claims continued to pend in the transferee court. Early the next year, Judge Kocoras separated the designated plaintiffs' Robinson–Patman Act claims from their Sherman Act claims. *See In re Brand–Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 2001 WL 59035, **1–2, 2001 U.S. Dist. LEXIS 1862, at *9–*10 (N.D.Ill. Jan. 19, 2001). The court made plain that it was acting pursuant to Federal Rule of Civil Procedure 42(b). *See id.* at 2001 WL 59035, *1 n. 1, 2001 U.S. Dist. LEXIS 1862, *8 n. 1. Judge Kocoras then recommended to the Panel that it remand the designated plaintiffs' Sherman Act claims to the district courts in which they had originated.

On October 19, 2001, the Panel, acting pursuant to 28 U.S.C. § 1407, issued an order remanding the separated Sherman Act claims to their respective transferor courts. *In re Brand–Name Prescription Drugs Antitrust Litig.*, 170 F.Supp.2d 1350, 1351–52 (Jud.Pan.Mult.Lit.2001). After the remand, the various transferor courts transferred all of the actions before them (of which the Sherman Act claims were a part) to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).[2]

On February 19, 2002, the transferee court recommended that the Panel remand the designated plaintiffs' Robinson–Patman Act claims against the designated defendants to the district courts in which they had been initiated (and from which they originally had been transferred). On July 3, 2002, the Panel entered a CRO.[3] The motion to vacate followed.

■ The movants first asseverate that the Panel should refuse to remand the Robinson–Patman Act claims at all, leaving those claims with the transferee court in order to resolve remaining factual issues. We reject this asseveration.

The Panel's organic statute, 28 U.S.C. § 1407, provides that each action transferred into an MDL proceeding "shall be remanded by the panel *at or before the conclusion of such pretrial proceedings* to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." (Emphasis supplied.) The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings, and courts routinely have read the statute in that flexible fashion. *See, e.g., In re Patenaude*, 210 F.3d 135, 145 (3d Cir.2000). The time, therefore, is propitious.

Moreover, the Panel's Rules of Procedure provide that the Panel may consider the question of remand on the motion of a party, the suggestion of the transferee court, or its own initiative. Rule 7.6(c),

---

**2.** There were two exceptions: (1) a case pending in the Southern District of Ohio was not transferred at all; and (2) a group of cases already pending in the Eastern District of New York simply remained in that venue.

**3.** The CRO was over-inclusive in one respect: the Panel, inter alia, conditionally remanded the Robinson–Patman Act claims of the desig-

nated plaintiffs against the non-designated defendants. The parties agree that the CRO, as framed, overstepped the boundaries of the transferee judge's suggestion of remand. On reflection, we share this view. Remand of these Robinson–Patman Act claims is not warranted at this time. Consequently, we vacate the CRO as it applies to the non-designated defendants.

R.P.J.P.M.L. In the matter at hand, Judge Kocoras, after thoroughly considering the parties' arguments, recommended that the Panel remand a particular subset of Robinson–Patman Act claims for which he deemed common expert and fact discovery to have been substantially completed.

We treat such suggestions respectfully. After all, the transferee judge is charged with the day-to-day supervision of centralized pretrial proceedings and, accordingly, has special insight into the question of whether further coordinated or consolidated proceedings are likely to be useful. A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game no longer is worth the candle (and, therefore, that he perceives his role under section 1407 to have ended). *See In re Holiday Magic Sec. & Antitrust Litig.*, 433 F.Supp. 1125, 1126 (Jud.Pan.Mult.Lit.1977). Viewed against this backdrop, it is not surprising that the Panel consistently has given great weight to the transferee judge's informed determination that remand at a given point in time is appropriate. *See, e.g., In re Baseball Bat*, 112 F.Supp.2d 1175, 1177 (Jud.Pan.Mult.Lit.2000); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F.Supp. 254, 256 (Jud.Pan.Mult.Lit.1976); *cf.* Rule 7.6(d), R.P.J.P.M.L. (stating that "the Panel is reluctant to order remand absent a suggestion of remand from the transferee district court"). In this instance, the movants have not offered us sufficient cause to reject the transferee judge's recommended course of action. Consequently, the Robinson–Patman claims are ripe for remand.

This decision does not end our journey. A question remains as to the identity of the court(s) to which we should remand. We turn next to that question.

We start this phase of our inquiry with the Panel's organic statute, 28 U.S.C. § 1407. That statute empowers the Panel to remand an action or claim "to the district from which it was transferred." *Id.* In discussing this aspect of the statute, the Supreme Court has said that an action or claim should be remanded to "its originating court" when centralized pretrial proceedings have run their course. *Lexecon, Inc. v. Milberg*, 523 U.S. 26, 34, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). The issue, then, becomes one of identifying the "originating court." This issue involves the interplay of two provisions of the Civil Rules (Fed.R.Civ.P. 42(b) and Fed.R.Civ.P. 21) and two statutes (28 U.S.C. § 1404(a) and 28 U.S.C. § 1407).

Rule 42(b) provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

Fed.R.Civ.P. 42(b). The text makes it readily evident that Rule 42(b) involves the separation of claims for trial under a format in which each claim remains part of the overall action. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518–19 & n. 8 (10th Cir.1991). In contrast, Rule 21 provides that "[a]ny claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. As opposed to the mere separation of claims within a single action, severance of claims under Rule 21 results in the creation of separate actions. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12(2)(c) (3d ed.2003).

With these rules in mind, we turn to the provisions of 28 U.S.C. § 1404(a). That statute provides:

For the convenience of parties and witnesses, in the interest of justice, a dis-

trict court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). For present purposes, the most significant feature of the statute is that it allows only the transfer of "actions." We compare and contrast that language with the language of section 1407, quoted *supra* at 3, which authorizes the transfer of "actions" and the remand not only of "actions" but also the remand of "claims" so long as that remand occurs while some part of the action remains pending before the transferee court. The *Lexecon* Court, addressing the issue of self-assignment under section 1404(a), concluded that the transferee court could not employ section 1404(a) to transfer a case to itself for trial, but rather, was obligated, upon the completion of coordinated or consolidated pretrial proceedings, to remand any remaining actions or claims to their "originating court[s]" for trial. *Lexecon,* 523 U.S. at 34–35, 118 S.Ct. 956.[4] In the present situation, the Panel is faced with the need to determine the true identity of the "originating court."

The history of the proceedings is informative. As said, Judge Kocoras ordered the designated plaintiffs' Robinson–Patman Act claims separated from their Sherman Act claims pursuant to Rule 42(b). *In re Brand–Name Prescription Drugs Antitrust Litig.,* MDL No. 997, 2001 WL 59035, **1–2, 2001 U.S. Dist. LEXIS 1862, at *9–*10 (N.D.Ill. Jan. 19, 2001). In that order Judge Kocoras eschewed any reference to Rule 21. Thus, the order did not divide any plaintiff's case into two separate actions. *See Chrysler Credit,* 928 F.2d at

1519 & n. 8 (distinguishing between "separation" of claims under Rule 42(b) and "severance" of claims under Rule 21). Rather, the separated claims remained part of a single action.

That was the state of the record in October of 2001, when the Panel, acting pursuant to 28 U.S.C. § 1407, remanded the separated Sherman Act claims to the district courts in which they originally had been filed. The Panel had the authority to winnow particular claims from an action and remand only those claims. *See* 28 U.S.C. § 1407; *see also In re Collins,* 233 F.3d 809, 810–812 (3d Cir.2000); 17 *Moore's Federal Practice, supra,* § 112.03(6)(d). The Panel exercised that authority in its October 19, 2001 order.

■ Subsequent to this remand, each transferor court save two, *see supra* note 2, ordered a transfer pursuant to section 1404(a). Each such order necessarily transferred the action in which the specific plaintiff's Sherman Act claim was embedded to the Eastern District of New York. After all, the plain language of section 1404(a) authorizes only the transfer of an entire action, not the transfer of individual claims within an action. *See Chrysler Credit,* 928 F.2d at 1518; *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618 (2d Cir.1968); *Cain v. N.Y. State Bd. of Elections,* 630 F.Supp. 221, 226 (E.D.N.Y. 1986); *see also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3846, at 363 (1986). A court acting under section 1404(a) may not transfer part of a case while maintaining jurisdiction over another part. *See In re Flight*

---

**4.** We note, however, that although the *Lexecon* Court concluded that a transferee court could not transfer a case to itself for trial, the Court did not foreclose all possibility that a transferee judge could try an action that had been transferred to him or her under section 1407 so long as the parties waived their entitlement to remand under section 1407. *See*

*Lexecon,* 523 U.S. at 36 n. 1, 118 S.Ct. 956; *see also In re Carbon Dioxide Indus. Antitrust Litig.,* 229 F.3d 1321, 1325–26 (11th Cir.2000) (noting that, in actions transferred under section 1407, the parties had stipulated that venue was for trial in the transferee court), *cert. denied,* 532 U.S. 920, 121 S.Ct. 1357, 149 L.Ed.2d 287 (2001).

*Transp. Corp. Sec. Litig.,* 764 F.2d 515, 516 (8th Cir.1985) (holding that section 1404(a) "contemplates a plenary transfer" of the entire case); *see also in re Multi-district Private Civil Action Litig. Involving Plumbing Fixtures,* 298 F.Supp. 484, 495–96 (Jud.Pan.Mult.Lit.1968) (noting that there is "overwhelming authority" for the proposition "that after an order changing venue the jurisdiction of the transferor court ceases") (collecting cases).

██ It follows that, from this point forward, nothing remained in the original transferor courts. When an action is transferred, its essential nature remains unchanged, and the action, together with all its accouterments, is sent to the receiving court. *See Magnetic Eng'g & Mfg. v. Dings Mfg.,* 178 F.2d 866, 868 (2d Cir. 1950) (L.Hand, J.); *Phebus v. Search,* 264 F. 407, 409–10 (8th Cir.1920). From the moment that the files are physically transferred to the receiving court, the sending court loses all jurisdiction over the case. *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 988–89 & n. 10 (11th Cir.1982); *In Re Nine Mile Ltd.,* 673 F.2d 242, 243 (8th Cir.1982); *In re S.W. Mobile Homes,* 317 F.2d 65, 66 (5th Cir.1963). Thus (with the exception mentioned in note 2, *supra*), no actions are pending in any of the original transferor courts to which the Robinson–Patman Act claims might attach. Those courts cannot, therefore, be regarded as the originating courts for purposes of the yet-to-be-remanded Robinson–Patman Act claims.

While the situation confronting us is unique, the Tenth Circuit faced an analogous situation in *Chrysler Credit.* In that case, the plaintiffs filed an action in the Western District of Oklahoma. Various counterclaims and a third-party complaint followed. The district court separated the claims under Rule 42(b). *Chrysler Credit,* 928 F.2d at 1513. The court eventually granted judgment for the plaintiffs on the primary complaint and then transferred the previously separated claims (the counterclaims and the third-party complaint) to the Eastern District of Michigan. *Id.* (invoking 28 U.S.C. § 1404(a)). That court granted summary judgment against the defendants, but refused to certify the judgment previously entered in the Western District of Oklahoma. *Id.* at 1514. The plaintiffs then asked the Oklahoma court to certify that judgment. *Id.* at 1514–15. The court reopened the case and complied. *Id.* at 1515.

On appeal, the Tenth Circuit reversed and remanded with instructions to vacate for lack of jurisdiction. *Id.* at 1521–22. It distinguished the separation of claims under Rule 42(b) from a Rule 21 severance; opined that the transfer of the counterclaims and third-party complaint under 28 U.S.C. § 1404(a) effectively shifted the entire action to the Michigan court; and concluded that the Oklahoma court had lost jurisdiction over all aspects of the case when it transferred the counterclaims and third-party complaint to Michigan. *Id.* at 1518–20 & n. 8.

██ The same principles are controlling here. For the most part—the two exceptions are described in note 2, *supra*—the district courts in which the cases originally were filed have transferred those actions to the Eastern District of New York. In each instance, the transfer encompassed the entire action, that is, not only the remanded Sherman Act claims but also the residual right to receive the Robinson–Patman Act claims upon their eventual remand. The transferor courts no longer have jurisdiction over any part of the actions, and a remand to those courts would be a nullity. Thus, the only sensible result is that the "originating court," for remand purposes, is no longer the district court in which a suit originally was commenced, but, rather, the court in which that suit is now pending (the Eastern Dis-

trict of New York).[5] Accordingly, we order remand of the designated plaintiffs' Robinson–Patman Act claims against the designated defendants to the Eastern District of New York (except for those cases mentioned in note 2, *supra* ).

This outcome is not inconsistent with Panel Rule 7.6, R.P.J.P.M.L. That rule states: "In the absence of unusual circumstances ... [e]ach action transferred only for coordinated or consolidated pretrial proceedings that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial." For the reasons discussed above, the Eastern District of New York has become the de facto transferor district for all of these cases. By the same token, this outcome is not inconsistent with *Lexecon*, in which the Court stated that "the statutory language of § 1407 precludes a transferee court from granting any § 1404(a) motion." 523 U.S. at 41 n. 4, 118 S.Ct. 956. Neither the Panel nor the transferee court is granting a section 1404(a) motion; the operative section 1404(a) transfers were granted long ago by the respective transferor courts.

We add a coda. We are aware that when the original transferor courts made their decisions to transfer the actions to the Eastern District of New York under section 1404(a), the Robinson–Patman Act claims were still pending before Judge Kocoras in the Northern District of Illinois. It is possible that, in light of this order, the transfer of the actions to the Eastern District of New York may no longer be appropriate. We take no view on that issue; we merely observe that, if any question exists, the suitability of the earlier transfer can be reexamined in the Eastern District of New York on the motion of any party (seeking a new section 1404(a) transfer) or on the court's own initiative.

We need go no further.[6] For the reasons stated herein, the CRO previously entered is vacated and a new order, consistent with this opinion, shall issue forthwith.

### So Ordered.

### REMAND ORDER

Consistent with the Opinion and Order delivered this date by Judge Selya, pursuant to 28 U.S.C. § 1407, the Robinson–Patman Act claims by the designated plaintiffs against the five designated defendants in the seventeen actions listed on the attached Appendix A are remanded from the Northern District of Illinois to their respective transferor districts. Specifical-

5. This result might well be different had the transferee court severed the claims under Rule 21. Separate trials under Rule 42(b) result in a single judgment, whereas claims severed under Rule 21 are transformed into independent actions, with separate judgments entered in each. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2387, at 277 (1995); 4 James Wm. Moore, *Moore's Federal Practice* § 21.06(1) (3d ed.1997).

6. We note that the language of section 1407 could be construed to mean that when the Panel separates and remands claims to the transferor court, the "action" remains pending in the transferee court and only the remanded claims are returned to the transferor court. We believe, however, that a better reading of the statutory language is that in instances in which the Panel has separated and remanded only certain claims, the action (though a single entity) is pending simultaneously both in the transferor and transferee districts. This reading comports with the administrative reality that files relating to the same civil action are open in both districts. It also constitutes sound policy: there is no good reason why a transferor court to which some but not all claims have been remanded should not have at its disposal all the authority Congress has provided for the prompt, efficient, and economical resolution of civil litigation (including the authority created by section 1404(a) which, as noted earlier in this opinion, allows the transfer only of "actions" and not of "claims").

ly, these claims in the two actions transferred from the Eastern District of New York are remanded to that district; these claims in the action transferred from the Southern District of Ohio are remanded to that district; and these claims in the fourteen remaining actions are remanded to the Eastern District of New York.

## APPENDIX A

### DOCKET NO. 997
#### *IN RE BRAND-NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION*

| — TRANSFEREE — DIST. DIV. C.A.NO. | — TRANSFEROR — DIST. DIV. C.A.NO. | CASE CAPTION |
|---|---|---|
| ILN 1 95-2582 | NYE 1 02-4002 | *Allard's Bell Park v. Abbott Laboratories, et al* (as to plaintiff Martin's Drug Store, Inc.) (formerly D. Connecticut, C.A. No. 3:94-1995) |
| ILN 1 95-3266 | NYE 1 02-2454 | *Mims Pharmacy, Inc. v. Abbott Laboratories, et al.* (as to plaintiff Hobb's Pharmacy, Inc.) (formerly M.D. Florida, C.A. No. 6:95-336) |
| ILN 1 95-37 | NYE 1 02-3697 | *Meadows v. Abbott Laboratories, et al.* (as to plaintiff Reagan's Pharmacy, Inc. d/b/a Reagan's Home Care Pharmacy) (formerly S.D. Georgia, C.A. No. 5:94-85) |
| ILN 1 95-2934 | NYE 1 02-3696 | *Ace Pharmacy, Inc. v. Abbott Laboratories, et al.* (as to plaintiff Don Auld's RX Shop., Inc. d/b/a Don Auld's) (formerly S.D. Georgia, C.A. No. 5:95-24) |
| ILN 1 95-741 | NYE 1 02-2258 | *Austin Pharmacy, Inc. v Abbott Laboratories, et al.* (as to plaintiffs Canan's Pharmacy and Low Cost Rx, Inc.) (formerly S.D. Indiana, C.A. No. 1:94-1966) |
| ILN 1 94-7816 | NYE 1 02-4118 | *RX Center v. Abbott Laboratories, et al.* (as to plaintiff Rowan Drug, Inc. d/b/a The Medicine Shoppe) (formerly E.D. North Carolina, C.A. No. 5:94-807) |
| ILN 1 95-1866 | NYE 1 95-402 | *Bi-Wise Pharmacy v. Abbott Laboratories, et al.* (as to plaintiff Randolph J. Weaver d/b/a The Medicine Shoppe) |
| ILN 1 95-3142 | NYE 1 95-1292 | *Drug Mart Pharmacy Corp. v. Abbott Laboratories, et al.* (as to plaintiff Miller of Wyckoff, Inc.) |
| ILN 1 95-1668 | NYE 1 02-3161 | *Al Tell Pharmacy & Gift Shoppe v. Abbott Laboratories, et al.* (as to plaintiffs Fox Drug Co. and Lyndhurst Drug d/b/a Lyndhurst Drug/Fox #1) (formerly N.D. Ohio, C.A. No. 4:94-2665) |
| ILN 1 94-3669 | OHS 1 94-160 | *Albertson's Inc. v. Abbott Laboratories, et al.* (as to plaintiffs Albertson's Inc. and Kroger Co.) |
| ILN 1 94-7272 | NYE 1 02-2510 | *2401 E. York Street, Inc., et al. v. Abbott Laboratories, et al.* (as to plaintiff William R. Seitzinger d/b/a Stapleton Pharmacy) (formerly M.D. Pennsylvania, C.A. No. 1:94-1694) |
| ILN 1 94-1200 | NYE 1 02-4432 | *Rite Aid Corp. v. American Home Products Corp.* (as to plaintiffs Rite Aid Corp. and Revco, D.S., Inc.) (formerly M.D. Pennsylvania, C.A. No. 4:93-1580) |
| ILN 1 95-3215 | NYE 1 02-2761 | *Savitz Drug Store, Inc. v. Abbott Laboratories, et al.* (as to plaintiff D.A.P., Inc. d/b/a Burke's Main Street Pharmacy) (formerly D. South Carolina, C.A. No. 2:95-869) |

- A2 -

ILN 1    94-2650    NYE 1    02-2504    *Malley's Pharmacy, Inc. v. Abbott Laboratories, et al.*
(as to plaintiffs Prescription Mart Pharmacy, Inc. d/b/a Generic Pharmacy and Lovoi & Sons Pharmacy, Inc.)
(formerly E.D. Texas, C.A. No. 1:94-97)

ILN 1    95-2711    NYE 1    02-3008    *Chin v. Abbott Laboratories, et al.*
(as to plaintiff Gloemco, Inc. d/b/a Pinewood Pharmacy)
(formerly S.D. Texas, C.A. No. 3:95-167)

ILN 1    95-2931    NYE 1    02-3205    *Marshall Pharmacies v. Abbott Laboratories, et al.*
(as to plaintiffs Towler Drug Co., Inc. and Fridley's Pharmacy, Inc.)
(formerly E.D. Virginia, C.A. No. 3:95-240)

ILN 1    95-796    NYE 1    02-3724    *4 W's, Inc. v. Abbott Laboratories, et al.*
(as to plaintiff Newport Hills Drugs, Inc.)
(formerly W.D. Washington, C.A. No. 2:94-1767)