**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**June 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RANDY SPITZ, as Assignee of Nancy
Aguilar and Real Trucking, Inc.,

    Plaintiff - Appellant,

v.

STARR INDEMNITY & LIABILITY
COMPANY, INC.,

    Defendant - Appellee.

No. 25-6074
(D.C. No. 5:24-CV-00500-D)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Plaintiff–Appellant Randy Spitz appeals the Western District of Oklahoma's

dismissal of his claims against Defendant–Appellee Starr Indemnity & Liability

Company ("Starr") under Federal Rule of Civil Procedure 12(c). He also challenges

the Northern District of Illinois's ruling granting Starr's motion to transfer venue to

the Western District of Oklahoma. Exercising jurisdiction under 28 U.S.C. § 1291,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

we affirm the district court's dismissal of Mr. Spitz's claims. We lack jurisdiction to review Mr. Spitz's challenge to the transfer of venue.

## I.    BACKGROUND

In February 2016, Nancy Aguilar was driving a tractor-trailer for her employer, Real Trucking, Inc. ("RTI") in Oklahoma City, Oklahoma and struck a vehicle driven by Mr. Spitz. The collision caused Mr. Spitz serious physical injuries. Mr. Spitz filed a lawsuit against Ms. Aguilar and RTI in Oklahoma County district court. At all relevant times, Mr. Spitz was a citizen of Oklahoma, Ms. Aguilar was a citizen of Kansas, and RTI was an Illinois corporation with its principal place of business in Illinois.

RTI's insurer was Starr, a Texas corporation with its principal place of business in New York. Starr provided RTI a commercial auto liability insurance policy with a $1,000,000 liability limit. Pursuant to this insurance policy, Starr defended Ms. Aguilar and RTI in the underlying lawsuit.

After settlement negotiations proved unsuccessful, a six-day jury trial in September 2019 resulted in judgment in favor of Mr. Spitz, and against Ms. Aguilar and RTI, for nearly $2.3 million with interest and costs. Starr then paid Mr. Spitz its maximum policy limit of approximately $990,000, leaving RTI and Ms. Aguilar liable for the remaining $1.3 million. RTI and Ms. Aguilar assigned any causes of action they had against Starr to Mr. Spitz. Mr. Spitz, as assignee of RTI and Ms. Aguilar, then filed a lawsuit against Starr in Cook County, Illinois. The case was subsequently removed to the Northern District of Illinois. Mr. Spitz's Amended

2

Complaint, filed in January 2023,[1] asserted that Starr acted in bad faith by failing to settle the underlying litigation within policy limits and, alternatively, that Starr's failure to settle amounted to negligence.

On January 2, 2024, Starr moved to transfer venue to the Western District of Oklahoma under 28 U.S.C. § 1404(a) on the basis that it was "a more convenient forum for the parties and witnesses, has the strongest ties to the case, and w[ould] allow for a full adjudication between all relevant parties." App. Vol. I at 228. The Northern District of Illinois granted Starr's motion and transferred the case to the Western District of Oklahoma.

Upon transfer, Starr moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), seeking dismissal of Mr. Spitz's bad faith and negligence claims. In its motion, Starr asserted that Oklahoma law governed the dispute and that, under Oklahoma law, Spitz's claims were barred. Specifically, Starr argued that Oklahoma law does not permit third-party assignment of bad-faith claims and likewise does not recognize a cause of action for negligent failure to settle by an insurer. Mr. Spitz opposed the motion, arguing that Illinois substantive law applied and would allow the assigned claims to proceed.

The district court granted Starr's Rule 12(c) motion and dismissed Mr. Spitz's claims with prejudice. Applying Illinois choice-of-law principles, the district court

---

[1] Mr. Spitz filed his original complaint in December 2020, which was removed to federal court in February 2021 and dismissed without prejudice in September 2021. Mr. Spitz filed his Amended Complaint on January 6, 2023.

first considered which state had the "most significant relationship" to Mr. Spitz's claims for bad faith and negligence by balancing the factors found in § 145 of the *Restatement (Second) of Conflict of Laws* ("Restatement"). Analyzing each of the factors enumerated in § 145, the court concluded that Oklahoma had the most significant relationship to the case because the underlying litigation "was filed and litigated in Oklahoma County District Court; the six-day trial took place in Oklahoma City; . . . the excess judgment was entered in Oklahoma County District Court . . ., [and] Plaintiff (an Oklahoma resident) made five separate offers leading up to the trial, which were communicated by Plaintiff's Oklahoma-based counsel." *Id.* at 64–65. The district court then considered the policy factors of § 6 of the Restatement. The court concluded that these factors also weighed in favor of applying Oklahoma law because

> 1) Oklahoma courts have the predominant interest in ensuring that parties who litigate in the state exercise good faith in attempting to resolve cases; 2) the protection of expectations are most easily and most logically set by the forum within which the parties are litigating; and 3) applying Oklahoma law ensures certainty, predictability, and finality because Oklahoma-based courts are most familiar with Oklahoma's legal framework, increasing the likelihood of a consistent outcome.

*Id.* at 66–67. The district court thus concluded that Oklahoma law governed.

Having determined that Oklahoma law controlled, the district court held that Mr. Spitz's claims failed as a matter of law. It noted that under Oklahoma law, the assignment of an insured's bad faith claim to a third party is prohibited. Therefore, the court concluded that RTI and Ms. Aguilar's bad-faith cause of action could not validly be assigned to Mr. Spitz under Oklahoma law. It further observed that, in

4

Oklahoma, an insured cannot maintain a standalone negligence claim against its insurer for mishandling a settlement opportunity, so Mr. Spitz's alternative negligence theory was also not cognizable. Accordingly, the court dismissed Mr. Spitz's case with prejudice. This appeal followed.

## II.     DISCUSSION

Mr. Spitz argues that the district court erred in concluding that Oklahoma law, rather than Illinois law, governed this litigation. He also challenges the district court for the Northern District of Illinois's ruling granting Starr's motion to transfer venue to the Western District of Oklahoma. We begin by addressing Mr. Spitz's choice of law challenge. We then turn our attention to the motion to transfer venue.

### A.     *Choice of Law*

We review choice-of-law decisions de novo. *Carolina Cas. Ins. Co. v. Burlington Ins. Co.*, 951 F.3d 1199, 1207 (10th Cir. 2020). When an action is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court applies the substantive law—including choice-of-law principles—of the transferor court. *See Ferens v. John Deere Co*., 494 U.S. 516, 523 (1990) ("A transfer under § 1404(a), in other words, does not change the law applicable to a diversity case."). Thus, because this case was transferred to the Western District of Oklahoma from the Northern District of Illinois, we look to Illinois choice-of-law rules in determining what law to apply.

In deciding choice-of-law questions in tort cases, Illinois follows the most significant relationship approach delineated in § 145 of the Restatement.

*Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 971 (Ill. App. Ct. 2000). Under this approach, courts must consider a number of contacts including (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Id.*; *see also* Restatement § 145(2) (1971). "[T]hese contacts are to be weighed 'according to their relative importance with respect to the particular issue.'" *Wreglesworth*, 738 N.E.2d at 971 (quoting Restatement § 145).

After determining the most significant relationship pursuant to the § 145 factors, courts must then consider the policy factors of § 6 of the Restatement, including "the relevant policies of the forum[,] the relevant policies of other interested states, the protection of justified expectations, and the predictability and uniformity of the result." *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 735 (S.D. Ill. 2016), *aff'd*, 878 F.3d 219 (7th Cir. 2017).

1.    **Place of Injury**

The first factor in Illinois's most significant relationship test is the place where the injury occurred. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007). Mr. Spitz contends that the place of injury in this case was Illinois because the economic loss of the excess judgment was felt in Illinois, where RTI is located. We disagree. In *West Side Salvage*, a district court for the Southern District of Illinois, applying Illinois law, explained that the "injury" in a bad-faith failure to settle claim is "[e]conomic loss," which "occurs at the place where the economic

6

consequence is felt." 215 F. Supp. 3d at 736. Even so, in applying this factor, the court explained that the factor was "neutral" because the plaintiff had not actually paid the money it sought to recover in its bad-faith failure to settle claim. *See id.* Rather, the underlying claims had been settled after trial and were "satisfied in full" by "exhausting the policy limits" of the defendant-insurer's coverage. *Id.* at 736 n.3.

The same reasoning applies here. Like in *West Side Salvage*, nothing in the record suggests that "[RTI] has paid the money it seeks in this suit." *See id.* at 736. To the contrary, Mr. Spitz concedes that RTI and Ms. Aguilar "assigned their potential claims against Starr to [Mr.] Spitz . . . . in satisfaction of the excess judgment, effectively shielding RTI and [Ms.] Aguilar from personal liability" for the excess judgment. Appellant's Br. at 4. Because RTI has not paid the excess judgment—and, by its own admission, is not liable for it—"this factor is neutral" under Illinois law. *See W. Side Salvage, Inc.*, 215 F. Supp. 3d at 736.

## 2.    Place of Conduct Causing Injury

The second factor is the place where the conduct causing the injury occurred. *Townsend*, 879 N.E.2d at 901. In a tort action for bad-faith failure to settle, the location of the conduct causing harm is generally the location of the underlying lawsuit. *See W. Side Salvage, Inc.*, 215 F. Supp. 3d at 736 ("As to the place where the conduct giving rise to the injury occurred—the place is clearly Illinois because the litigation of the underlying case, and the numerous opportunities to settle leading up to trial and during trial took place in Illinois, before this Court."); *see also ROC ASAP, L.L.C. v. Starnet Ins.*, No. CIV-12-461-D, 2014 WL 667833, at *3 (W.D.

7

Okla. Feb. 20, 2014) (unpublished) (explaining that the conduct giving rise to the injury took place in Maryland because "the parties' communications, issuance of payment and other aspects of claims handling were directed out of Maryland and primarily occurred there"). Here, because the underlying litigation took place in Oklahoma, the various offers to settle the litigation were communicated by Mr. Spitz's Oklahoma-based counsel, and the alleged misconduct occurred on the part of Starr's Oklahoma-based counsel, we conclude that the conduct giving rise to the injury occurred in Oklahoma.

Mr. Spitz resists this conclusion because Starr hired a Texas-based law firm to defend RTI and Ms. Aguilar in the lawsuit. However, Mr. Spitz cites no authority suggesting that the attorneys are not "Oklahoma-based" for purposes of the choice-of-law analysis simply because they predominantly practice in another state or may not have been physically present in Oklahoma at different times during the underlying litigation. Moreover, he admits that Starr's attorneys appeared before the Oklahoma court and the tortious conduct alleged in this case was related to the attorneys' activities in the Oklahoma-based lawsuit. We are therefore not persuaded that the physical location of the assignors' attorneys alters our analysis of this factor.

3.     **Domicile of Parties**

The third factor in the most significant relationship analysis is the domicile or place of incorporation and place of business of the parties. *W. Side Salvage, Inc.*, 215 F. Supp. 3d at 735. Here, the parties and assignors are domiciled in different states: Mr. Spitz, the plaintiff, is domiciled in Oklahoma; Ms. Aguilar, an assignor, is

8

domiciled in Kansas; RTI, an assignor, is an Illinois corporation with its principal place of business in Illinois; and Starr, the defendant, is a Texas corporation with its principal place of business in New York. Because the relevant actors in this case are each domiciled in different states—including both Oklahoma (Mr. Spitz) and Illinois (RTI)—"[w]e view this contact as a wash." *See Townsend*, 879 N.E.2d at 906; *see also W. Side Salvage, Inc.*, 215 F. Supp. 3d at 736 (explaining that where the "parties are located in different places . . . this factor does not strongly support either jurisdiction").

Nevertheless, Mr. Spitz argues that we should ignore Mr. Spitz's domicile and instead focus exclusively on the domicile of the assignors. He claims that "in an assigned claim, it is the assignors' domiciles and contacts that carry weight, not the assignee's." Appellant's Br. at 22. Thus, Mr. Spitz contends that his domicile in Oklahoma carries no weight, and that we should instead view him "stand[ing] in the shoes of RTI and Ms. Aguilar" for purposes of the choice-of-law analysis. *Id.* By this logic, he argues this factor would weigh in favor of applying Illinois law since one of the assignors, RTI, is an Illinois corporation. However, Mr. Spitz cites no cases, and we have found none, supporting his claim that we should not consider the assignee's domicile. Indeed, authority supports the opposite. In *ROC ASAP, L.L.C. v. Starnet Ins.*, No. CIV-12-461-D, 2014 WL 667833, at *3 (W.D. Okla. Feb. 20, 2014), for example, a district court applying the most significant relationship test considered the plaintiff's domicile even though the plaintiff brought the bad-faith failure to settle

9

claim as an assignee of a separate entity.[2] We see no reason to depart from this reasoning and ignore the plaintiff–assignee's domicile in conducting the tort-based choice-of-law analysis.[3] Accordingly, we conclude that the relevant parties are located in different places and that this factor is neutral.

## 4.    Place of Relationship

The fourth factor in the most significant relationship test is the place where the relationship between the parties, "if any," is centered. *See Townsend*, 879 N.E.2d at 901. The parties dispute whether, in evaluating this factor, our focus should be on the plaintiff/defendant relationship between Mr. Spitz and Starr, or on the insurer/insured relationship between Starr and RTI. Starr contends that the plaintiff/defendant relationship controls, and that this factor is therefore neutral

---

[2] There, the district court for the Western District of Oklahoma applied Oklahoma choice-of-law rules. *ROC ASAP, L.L.C. v. Starnet Ins.*, No. CIV-12-461-D, 2014 WL 667833, at *3 (W.D. Okla. Feb. 20, 2014) (unpublished). However, Oklahoma courts apply a four-factor most significant relationship test to determine the choice of law in tort disputes that is nearly identical to the test used by Illinois courts. Thus, although it does not apply Illinois law, *ROC ASAP* nevertheless provides some guidance regarding the application of Illinois's choice-of-law rules.

[3] Mr. Spitz also argues on appeal that Ms. Aguilar's domicile in Kansas supports the application of Illinois law because "Kansas shares Illinois's pro-assignment stance." Appellant's Br. at 23. Mr. Spitz waived the argument by failing to raise it before the district court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011); *see also United States v. Eddings*, 158 F.4th 1133, 1142–43 (10th Cir. 2025) ("Changing to a new theory on appeal that falls under the same general category as an argument presented at trial or discussing a theory only in a vague and ambiguous way below is not adequate to preserve issues for appeal." (quotation marks omitted)). We therefore decline to comment on the merits of this argument.

10

because Mr. Spitz, as an assignee, has no direct relationship with Starr. Mr. Spitz, for his part, contends that the relevant relationship is of "the original parties to the underlying dispute (the insurer and insured)." Appellant's Br. at 24. He argues that "the insurer/insured relationship between Starr and RTI/Aguilar was firmly centered in Illinois" because "Starr issued the policy to RTI in Illinois and communicated with RTI through its Illinois-based agents and offices[,] RTI paid premiums in Illinois and relied on the insurance for its Illinois-based operations[,] [and] [t]he duties that give rise to this tort . . . arose from that contract in Illinois." *Id.* at 23–24. Thus, Mr. Spitz claims that the third factor supports the application of Illinois law.

We are not persuaded. First, Mr. Spitz cites no authority supporting his position that it is the relationship between the insurer/insured that controls here. And to the contrary, *ROC ASAP* suggests that it is the relationship between the named parties that controls, even where the plaintiff is an assignee. 2014 WL 667833, at *3 ("Plaintiff brings the bad faith claim as assignee of Silverleaf. As such, Plaintiff and Defendant have no direct relationship."). Next, even if we assume that the relevant relationship for this factor is the insurer/insured relationship between Starr and RTI, considerations related to the formation of the entities' contractual relationship are not relevant in Illinois's tort-based choice-of-law analysis. Rather, the relevant relationship is "the interactions between the parties during the trial." *W. Side Salvage*, 215 F. Supp. 3d at 736. Applying this logic, the relevant question here is not where the relationship between RTI and Starr was formed, but rather where their "interactions" during the underlying litigation took place. *See id.* Here, the

11

underlying lawsuit was filed and litigated in Oklahoma, and the settlement negotiations took place between the parties' counsel appearing in that Oklahoma litigation. Accordingly, even accepting Mr. Spitz's analytical framework and examining only the insurer/insured relationship between RTI and Starr, this factor weighs in favor of applying Oklahoma law.[4]

On balance, Oklahoma has the most significant relationship to the occurrence and parties. The conduct leading to injury occurred in Oklahoma, and the interactions between the parties took place in Oklahoma during the underlying litigation before an Oklahoma court. The only relevant contact favoring application of Illinois law is that one of the assignors, RTI, is an Illinois corporation. But because one of the parties, Mr. Spitz, is domiciled in Oklahoma, RTI's domicile does not tip the scale in favor of applying Illinois law. Thus, taking into consideration Illinois's and Oklahoma's respective contacts with the occurrence and the parties, we conclude that Oklahoma law governs.[5]

---

[4] Under Illinois law, there is a separate choice-of-law analysis for claims sounding in contract. Specifically, under the "contract centric analysis," Illinois courts consider the factors in § 188 of the Restatement, including "the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and, the domicile, residence, nationality, place of incorporation and place of business of the parties." *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 735 (S.D. Ill. 2016). But Mr. Spitz did not ask the district court to apply the contract centric analysis, and on appeal he concedes that the tort-based choice-of-law framework applies. Thus, we decline to consider the § 188 factors in our analysis.

[5] Mr. Spitz argues that the district court erred in its application of the policy factors described in § 6 of the Restatement. For instance, he claims that the goals behind Oklahoma's policy prohibiting assignment of bad-faith tort claims "have little

Mr. Spitz concedes that under Oklahoma law, his bad faith and negligence claims fail. Accordingly, we affirm the district court's dismissal of Mr. Spitz's case under Rule 12(c).

### B.    Venue Transfer

Next, Mr. Spitz argues that the Northern District of Illinois erred by granting Starr's motion to transfer venue. He contends that the district court erred in granting the motion because, at the time Starr moved to transfer, Starr "had unequivocally waived any venue challenge" by "litigat[ing] this case in Illinois for years." Appellant's Br. at 28–29.

We lack jurisdiction to directly review the Northern District of Illinois's ruling. "Once the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer." *Chrysler Credit Corp. v. Country Chrysler, Inc.*,

---

force here" because Starr is not an Oklahoma insurer, Appellant's Br. at 25, and that applying Illinois law would promote "certainty, predictability, and uniformity" because Starr's obligations would be consistent regardless of the place of accident, *id.* at 27. However, Mr. Spitz forfeited these arguments by failing to raise them before the district court. When a party fails to raise a legal theory before the district court, the argument is forfeited and can only be reversed where the party shows plain error. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). And "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131. Here, Mr. Spitz failed to make any mention of the § 6 factors in either his initial or supplemental briefing before the district court. And on appeal, he does not attempt to argue that the court's application of the § 6 factors constituted plain error. Accordingly, we decline to address Mr. Spitz's novel arguments regarding the application of the § 6 factors.

928 F.2d 1509, 1516–17 (10th Cir. 1991). And "traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including its transfer order." *Id.* at 1516. However, "[t]he law of the case doctrine does not deprive a transferee court of its power to correct an erroneous transfer decision." *N.E.L. v. Gildner*, 780 F. App'x 567, 573 (10th Cir. 2019) (unpublished).[6] Rather, "[a] litigant dissatisfied with the transfer decision may still bring a motion to retransfer in the transferee court." *Id.* (quotation marks and brackets omitted); *see also F.D.I.C. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) ("Indirect review of [orders transferring venue under § 1406(a)] can be obtained by bringing a motion to retransfer in the transferee court."). Once the transferee court rules on that motion to retransfer, nothing in our caselaw "precludes the parties from arguing or the transferee circuit from reviewing whether the transferee district court correctly applied the law of the case in the transferred action." *Chrysler Credit*, 928 F.2d at 1518. Thus, a transferee court retains limited authority to correct decisions of the out-of-circuit transferor court, including the transfer decision. *See id.*

Here, however, Mr. Spitz did not bring a motion to retransfer in the Western District of Oklahoma. Rather, he urges us to directly review the out-of-circuit Northern District of Illinois's ruling granting Starr's motion to transfer. Our caselaw firmly establishes that we have no jurisdiction to address this challenge. *See id.*

---

[6] "We cite unpublished cases for their persuasive value only and do not treat them as binding authority." *United States v. B.N.M.*, 107 F.4th 1152, 1169 n.10 (10th Cir. 2024).

14

(citing cases holding that transferee circuit has no authority to adjudicate an allegedly erroneous transfer absent a motion to retransfer); *see also McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 954 (10th Cir. 1989) ("Because the District of Columbia is not within the territory of this circuit, the unequivocal language of this statute leaves no room for doubt that we do not have jurisdiction over the D.C. appeal."). Accordingly, we decline Mr. Spitz's invitation to review the transferor court's decision granting Starr's motion to transfer venue.

### III.    CONCLUSION

For the reasons explained herein, we AFFIRM in full the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge